[L. A. No. 18790. In Bank. Apr. 19, 1944.]

RUTH V. W. OETTINGER, Appellant, v. EDWIN STEWART et al., Respondents.

Thurlow T. Taft for Appellant.

Elbert E. Hensley and John H. Klenke for Respondents.

GIBSON, C. J.—Plaintiff brought this action against the owners and operators of an apartment building in the city of Santa Monica to recover damages for personal injuries claimed to have resulted from the negligent conduct of defendant May Stewart. The jury returned a verdict for defendants, and plaintiff appealed from the ensuing judgment.

On the afternoon of July 10, 1940, plaintiff, a woman seventy-one years of age, called at the premises looking for an apartment. At the front of the building were three or four steps leading from the sidewalk to a small cement porch. Defendants, husband and wife, occupied an apartment near the front door of the building, using it both as living quarters and as an office. The word "office" was on a placard on the wall in the main hallway next to the entrance to defendants' apart-

ment. Plaintiff entered the building and rang the office bell which was answered by defendant May Stewart (hereinafter called defendant). Defendant testified that in response to plaintiff's inquiry she informed plaintiff there were no vacancies at present but that there might be one in the fall, that plaintiff then stated that she felt sick and would have to sit down a minute, and that, without invitation, plaintiff entered the apartment and sat down. Plaintiff testified that defendant asked her to "come in" the apartment, and denied stating that she felt sick or was sick. She remained five or ten minutes, during which time the parties engaged in conversation. When plaintiff arose to leave, defendant preceded her and opened the door leading to the porch. Plaintiff went out first, crossing the porch and going down the steps, and at the bottom she turned around and stood in front of the lower step. It is not entirely clear from the record exactly where plaintiff was standing at the time of the accident, but there is testimony indicating that she was upon a small walk or "sidewalk" between the bottom step and the adjoining public sidewalk, and the case was apparently tried on the assumption that the accident took place upon defendants' premises. Defendant followed plaintiff outside but remained standing on the edge of the porch at the top of the steps. Defendant then looked up at the sky, remarking about the beautiful day, and suddenly, without warning, lost her balance and fell forward down the steps, striking plaintiff and knocking her down. Defendant testified: ". . . I don't know what happened, except that I was just flying down the steps and my heels touched each step as I went down. . . ." She said she knew she didn't stumble but didn't know whether or not she had a fainting spell or lost consciousness. According to plaintiff, defendant had started forward to step down and the heel of her left foot caught, causing her to fall. While falling, defendant attempted to avoid plaintiff, but although plaintiff saw defendant start to fall, she, by her own testimony, did not move, saying there was insufficient time.

The grounds for reversal urged by plaintiff are based upon asserted prejudicial error in the numerous lengthy and repetitious instructions that the trial court gave the jury. At plaintiff's request, three instructions were given relating to the duty of care owed by an apartment house operator to an

"invitee." Subsequently, five instructions were given at defendant's request defining the relationships and duties of a landowner or possessor toward a trespasser, a social guest or other gratuitous licensee, and an "invitee" (used in the sense of business visitor).

The terms trespasser, licensee, and business visitor are defined in the Restatement, Torts, as follows: "A trespasser is a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." (§ 329.) "A licensee is a person who is privileged to enter or remain upon land by virtue of the possessor's consent, whether given by invitation or permission." (§ 330.) "A gratuitous licensee is any licensee other than a business visitor as defined in § 332." (§ 331.) "A business visitor is a person who is invited or permitted to enter or remain on land in the possession of another for a purpose directly or indirectly connected with business dealings between them." (§ 332.) It should be noted that although the Restatement classified both a gratuitous licensee and a business visitor under the broad heading of "licensee," the parties herein and the trial court, following the general practice, used the word "licensee" to describe a gratuitous licensee as distinguished from a business visitor. (See Prosser on Torts [1941], 625, 635.)

The instructions requested by defendant contained statements and implications that the only duty owed to trespassers and licensees was to refrain from intentional harm and willful or wanton injury, and plaintiff contends that the trial court committed prejudicial error by so instructing the jury.

█ It is clear that in this case plaintiff was a business visitor, and there was no evidence from which the jury could have found that plaintiff was a trespasser or a licensee.

█ An invitation or permission to enter upon land need not be express but may be implied from such circumstances as the conduct of the possessor, the arrangement of the premises, or local custom. (See *Tschumy* v. *Brook's Market*, 60 Cal. App.2d 158, 165 [140 P.2d 431]; Rest., Torts, §§ 330-332, Comment.) Here the building was obviously an apartment house. On the outside was a sign reading "York House," and in the hall was another sign bearing the word "office."

█ Plaintiff came upon the premises as a prospective tenant—a purpose connected with the business conducted thereon, and she, therefore, was a business visitor. (See 38 Am.

Jur. 754, 783, 784; 45 C.J. 808-812.) ▌ Defendant contends that after plaintiff learned that there were no vacancies all business was completed, and that if she subsequently went into defendant's apartment without an invitation and for some purpose of her own, her status changed to that of trespasser or licensee. Accepting as true defendant's testimony that plaintiff entered the room without express invitation and solely because she was sick and wished to sit down, the original implied invitation or permission to enter the building included the right to depart therefrom. The accident occurred during plaintiff's departure from a portion of the premises covered by defendant's implied invitation. Plaintiff was a business visitor, therefore, and defendant owed her a duty to exercise ordinary care to avoid injuring her. (*Cf. Hinds* v. *Wheadon,* 19 Cal.2d 458 [121 P.2d 724]; Rest., Torts, §§ 341, 343; 19 Cal.Jur. 621.) ▌ The instructions relating to trespassers and licensees indicating that a lesser standard of care might be applicable had no proper place in this action, and they could have served only to confuse the jury and mislead them as to the correct standard of care to be applied.

▌ Moreover, the instructions as to licensees contain an incorrect statement of the law. The jury was told that: "An 'Invitee' who enters upon portions of the premises where she has no right to enter becomes a 'Licensee' and the *only duty to her* then is to refrain from *wilful or wanton injury.*" (Italics added.) There has been some confusion in the authorities as to the duty of care owed by a landowner or possessor to a licensee. The courts have frequently made general statements to the effect that the only duty to a licensee is to abstain from willful or wanton injury. (See, for example, *Powers* v. *Raymond,* 197 Cal. 126, 131 [239 P. 1069]; *Giannini* v. *Campodonico,* 176 Cal. 548, 550 [169 P. 80]; *Means* v. *Southern California Ry. Co.,* 144 Cal. 473, 479 [77 P. 1001, 1 Ann.Cas. 206]; *cf. Jacobson* v. *Northwestern Pac. R.R. Co.,* 175 Cal. 468, 472 [166 P. 3]; *Kennedy* v. *Chase,* 119 Cal. 637, 642 [52 P. 33, 63 Am.St.Rep. 153]; *Schmidt* v. *Bauer,* 80 Cal. 565, 568-569 [22 P. 256, 5 L.R.A. 580]; *Koppelman* v. *Ambassador Hotel Co..* 35 Cal.App.2d 537, 540-541 [96 P.2d 196]; *Hall* v. *Southern Cal. Edison Co.,* 137 Cal.App. 449, 453 [30 P.2d 1013]; *Goldberger* v. *Market Street Ry. Co.,* 130 Cal. App. 597, 604 [20 P.2d 351]; *State Compensation Ins. Fund*

v. *Allen,* 104 Cal.App. 400, 409-410 [285 P. 1053]; 19 Cal. Jur. 616, 623; *Aguilar* v. *Riverdale C. C. Assn.,* 104 Cal. App. 263, 267 [285 P. 889]; *Kneiser* v. *Belasco-Blackwood Co.,* 22 Cal.App. 205, 206 [133 P. 989].) On their facts, however, all of these cases involved injuries resulting from a defective condition of the premises, as distinguished from active conduct of the possessor or his employees. In other cases it has been suggested that a duty of ordinary care is not owed to a licensee even though injury resulted from active conduct rather than mere passive condition of the premises. (*Brown* v. *Pepperdine,* 53 Cal.App. 334 [200 P. 36]; *cf. Tharp* v. *San Joaquin Cotton Oil Co.,* 27 Cal.App.2d 554 [81 P.2d 443, 82 P.2d 21]; *Brown* v. *Feather River Lumber Co.,* 203 Cal. 493 [265 P. 203, 57 A.L.R. 812]; *Neil* v. *Feather River Lumber Co.,* 203 Cal. 502 [265 P. 207].) The prevailing view is to the contrary, however, and it is now generally held that in cases involving injury resulting from active conduct, as distinguished from condition of the premises, the landowner or possessor may be liable for failure to exercise ordinary care toward a licensee whose presence on the land is known or should reasonably be known to the owner or possessor. (Rest., Torts, § 341; Prosser on Torts [1941], 630; 45 C.J. 803-805.) In Prosser on Torts, *supra,* the author explains: ''Some courts have gone so far as to say that there is no duty to a licensee other than to refrain from inflicting wilful or wanton injury upon him. As in the case of trespassers, however, an increasing regard for human safety has led to a retreat from this position. It is now generally held that as to any active operations which the occupier carries on, there is an obligation to exercise reasonable care for the protection of a licensee. He must run his train, operate his machinery, or back his truck with due regard for the possibility that the permission given may have been accepted and the guest may be present.'' The more recent California decisions have adopted this rule. (*Turnipseed* v. *Hoffman,* 23 Cal.2d 532, 534-535 [144 P.2d 797]; *Demmon* v. *Smith,* 58 Cal.App.2d 425, 432 [136 P.2d 660]; *Colgrove* v. *Lompoc etc. Club,* 51 Cal.App.2d 18, 22, 23 [124 P.2d 128]; *Yamauchi* v. *O'Neill,* 38 Cal.App.2d 703, 707-709 [102 P.2d 365]; *Gay* v. *Cadwallader-Gibson Co.,* 34 Cal.App.2d 566, 570 [93 P.2d 1051]; *Lindholm* v. *Northwestern Pac. Ry. Co.,* 79 Cal.App. 34, 40 [248 P. 1033]; *Herold* v. *P. H. Mathews Paint House,* 39 Cal.App. 489, 493, 494 [179 P. 414]; *Lucas* v. *Walker,* 22

Cal.App. 296, 301 [134 P. 374, 379] ; *cf. Smithwick* v. *Pacific Elec. Ry. Co.*, 206 Cal. 291, 299, 300 [274 P. 980] ; *Hamakawa* v. *Crescent Wharf & W. Co.*, 4 Cal.2d 499, 501, 502, 503 [50 P.2d 803] [trespasser].) The cases cited herein suggesting that a lesser standard of care is applicable where injury results from active conduct of the landowner or possessor are inconsistent with the later decisions and must be disapproved.

■ In the present case it is apparent that plaintiff's presence on the premises was known to defendant at the time of the accident and that the accident did not result from a defective condition of the premises. Accordingly, even if plaintiff were a licensee rather than a business visitor, it is clear that defendant had a duty to exercise ordinary care to avoid injuring her, and the trial court should not have given the criticized instruction. The error was not cured by the giving of another instruction to the effect that when a licensee's presence is known the licensor is bound to exercise ordinary care to avoid injuring the licensee by any "overt act." The second instruction was inadequate under the circumstances of this case and, in any event, the two instructions taken together presented conflicting and confusing statements of the law to the jury.

■ The trial court, in addition to giving several instructions on contributory negligence, informed the jury at defendant's request that "one who for purposes of her own voluntarily places herself in a position of danger, assumes the risk of injury ordinarily incident to such a position and is charged with the responsibility of exercising that quantum or degree of care for her own safety commensurate with her danger, and therefore, if you find that at the time of, or immediately prior to, the happening of the accident complained of, the plaintiff Mrs. Oettinger voluntarily placed herself in a position of danger, or that she failed to remove herself from a position of danger, if you find she could, by the exercise of ordinary care, have done so, then she must assume the risk of injury which ordinarily may be considered as incident to placing herself in such position or in failing to remove herself from such position, if by the exercise of ordinary care she could have done so." There was no evidence justifying an instruction upon the theory that plaintiff assumed the risk by voluntarily placing herself in a position of danger. In the absence of special circumstances that should reason-

ably have warned plaintiff that defendant might fall upon her, a finding that plaintiff assumed the risk of such a fall by standing near defendant would be unwarranted.

It should be noted that there is some evidence of plaintiff's contributory negligence, but we cannot say that the record shows contributory negligence as a matter of law. The issue was one of fact for the jury to determine. It cannot be assumed under the circumstances of this case that the jury's verdict for defendant was based on the evidence of contributory negligence alone; it may well have been predicated upon a theory of defense permitted by one or more of the erroneous instructions discussed above. As stated in *O'Meara* v. *Swortfiguer*, 191 Cal. 12, 15 [214 P. 975]. "It is true that in determining whether or not a verdict is supported by the evidence, we must assume that the jury accepted the view most favorable to the respondent. However, in determining whether or not the instructions given are correct, we must assume that the jury might have believed the evidence upon which the instruction favorable to the losing party was predicated, and that if the correct instruction had been given upon that subject the jury might have rendered a verdict in favor of the losing party." (*Cf. Young* v. *Southern Pacific Co.*, 182 Cal. 369, 382-384 [190 P. 36]; *Criswell* v. *Pacific Elec. Ry. Co.*, 48 Cal.App.2d 819, 823, 824 [120 P.2d 670]; *Galloway* v. *United Railroads*, 69 Cal.App. 770, 774 [232 P. 491].) In cases where it clearly appears that the jury did not rely upon the erroneous instructions, the judgment may be affirmed on the ground that the error is not prejudicial. This, however, is not such a case. Neither the evidence of contributory negligence nor of negligence, although sufficient as a matter of law, can be said to be convincing, and we should not speculate upon the basis of the verdict.

The judgment is reversed.

Shenk, J., Curtis, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.