[Civ. No. 7904. Third Dist. May 21, 1951.]

ROBERT FERNANDEZ, Respondent, v. AMERICAN BRIDGE COMPANY, Appellant.

Walter Shelton and Carr & Kennedy for Appellant.

L. C. Smith and Chenoweth & Leininger for Respondent.

ADAMS, P. J.—Defendant has appealed from a judgment against it for $40,000 which followed a verdict in favor of plaintiff for that amount as damages for personal injuries which he sustained in an accident attributed to the negligence of employees of defendant. Appellant urges as grounds for reversal that the evidence is insufficient to prove negligence on its part, and that the court erred in instructing the jury.

Considering the evidence in the light most favorable to respondent as perforce we must do, the following facts are established.

The American Bridge Company had a contract with the United States Reclamation Bureau to furnish and install the steel drum gates in Shasta Dam. It was necessary, before the steel was installed, that it be sandblasted, and defendant contracted with D. E. Burgess Company to perform that service. Defendant arranged with the Southern Pacific Company to use a yard at Coram, below the dam, for the sandblasting operation. There, about 50 feet south of the railroad company's main line, and parallel thereto, running east and west, was a spur track upon which a crane stationed upon a flatcar was operated. The steel ribs, brought in on the main line, were unloaded and stacked just south of main line, and the sandblasting equipment was located about 20 feet south of the spur track. It was defendant's business, with the use of the crane, to deliver the ribs to the sandblasting equipment and remove them therefrom when the operation was concluded. These ribs were in the form of an arc, were 26 feet long, and, when upright as they were stacked, the arms extended upward

about 7 feet.   About midway between the main line and the spur track, and about 100 feet east of the compressor which operated the sandblasting equipment, a drinking fountain was located.   It consisted of an upright pipe about 4 feet high, which brought in cool spring water for the use of all employees on the job, and which was allowed to run continuously to keep the water cool.   A keg was placed so as to catch the flow, and some of the men kept milk in it.   It was the only water supply on the premises, and not only furnished water for drinking, but for use in the compressor and the crane.   It was used by all of the employees of both companies.

The crew operating the crane consisted of Rountree, the operator, Wilkinson, the foreman, Lewis, Elliott and Brewster, hook tenders, Oswalt, also known as Thomas, signalman, and Ingle, the foreman who was in the yard only occasionally.

On August 12, 1948, plaintiff Fernandez was, and had been since early in June, employed to operate the compressor for the Burgess Company.   About 9 a. m. he went to the fountain to get a drink.   The crane was then standing on the spur track, having just been used to load a truck with steel bound for the dam which was east of the field of operation.   The arm was pointed in that direction.   On his way to the fountain Fernandez talked with Brewster, Elliott and Lewis.   The latter two passed him and crawled up on a stack of some seven steel ribs which were and had been for some weeks standing upright, that is, upon the rounded base, just north of the fountain.   They apparently were looking for numbers on the ribs, as the numbers indicated the ribs that were next in order for sandblasting.   The crane was not in operation—not moving.   While plaintiff was getting his drink and facing southerly, Brewster, who was near him, called ''Look out.''   Fernandez started to run south but was struck by one of the steel ribs which had fallen over.   He sustained serious injuries.

Brewster testified that he saw Fernandez getting a drink; that the signalman gave the crane operator the signal to pick up a steel rib, and when the crane started to do so it knocked over two of the ribs.   Rountree, the operator of the crane, testified that he did not see Fernandez at the fountain; that he operated the crane according to the signals of Oswalt, the signalman.   Lewis said that he thought Oswalt was in a position where he could see Fernandez.   Elliott testified that after the crane had hooked onto the steel he gave the signal to lift it, and when he saw the other ribs were tipping he

called "Look out" to Fernandez, and to Brewster who was also near the fountain.

Appellant contends that Fernandez, when he went to the fountain, was a trespasser, or at most a bare licensee in that he came to the fountain for a purpose solely his own, in nowise connected with his employment, without defendant's knowledge or expectation, and that defendant was under no obligation toward him except not to injure him wantonly or wilfully. Cases are cited as to the duty owed trespassers or licensees. Respondent replies that he was not a trespasser, that his presence at the fountain was known to members of the crane crew, and that the duty of ordinary care was owed him.

The evidence does not show that Fernandez was a trespasser or a mere invitee at the fountain. It does not appear that the yard was divided into areas to which the Bridge Company and the Burgess Company were limited in their operations. It was a small area. The crane moved up and down the spur track, though it was usually parked near the fountain when not in use elsewhere. Ribs awaiting sandblasting were stacked at different places. There is ample proof that the fountain was maintained for and used by the crews of both companies. It was August and cool water for the employees was an obvious necessity, and there was no other supply. Also, the evidence shows that the crane was not used continuously but only occasionally, and it could well have been anticipated that some one of the various employees would be at the fountain not infrequently.

The California rule seems to be that, regardless of the status of a plaintiff as licensee, trespasser or invitee, where defendant knew, or should have known, of plaintiff's presence, the duty of reasonable care was owed to him. See *Yamauchi* v. *O'Neill*, 38 Cal.App.2d 703 [102 P.2d 365]; *Demmon* v. *Smith*, 58 Cal.App.2d 425, 432-433 [136 P.2d 660]; *Newman* v. *Fox West Coast Theatres*, 86 Cal.App.2d 428 [194 P.2d 706]; *Oettinger* v. *Stewart*, 24 Cal.2d 133 [148 P.2d 19, 156 A.L.R. 1221]; *Fernandez* v. *Consolidated Fisheries, Inc.*, 98 Cal.App.2d 91 [219 P.2d 73] (hearing in Supreme Court denied); and 156 A.L.R. 1228.

In the Yamauchi case, pages 707-708, it was said:

"The rule upon which defendants rely finds expression in many of the authorities but it is limited in its application to cases dealing with the duty owed to a licensee with respect to the condition of the premises or, as sometimes expressed,

to cases involving only passive negligence as distinguished from active negligence. The authorities may not be entirely in accord· in determining what constitutes passive negligence and what constitutes active negligence but there can be no doubt whatever that the negligent operation of a moving vehicle in a place where the operator has good reason to expect the presence of licensees constitutes active negligence as distinguished from passive negligence. Under such circumstances the duty owed by the operator of the moving vehicle to a licensee, whether such operator be the licensor or any other person, is not merely the duty to refrain from wilful or wanton conduct but is the duty to exercise ordinary care."

Also at page 709:

"In the case before us plaintiff was in no sense a trespasser. She was admittedly either an invitee or a licensee and she was injured by the active negligence of defendants at a place where defendants had good reason to expect the presence of invitees and licensees. Under these circumstances, we believe the question of whether plaintiff was an invitee or licensee was wholly immaterial for in either case defendants owed to plaintiff the duty to exercise ordinary care in the operation of the delivery truck and could be. held liable for their breach of that duty." Hearing in the Supreme Court denied.

In the more recent case of *Fernandez* v. *Consolidated Fisheries, Inc.,* we find the rule stated on pages 95-97 as follows:

"The law in reference to the duty owed to trespassers, licensees and invitees has largely developed in reference to the duty of an owner or occupier of real property or structures thereon. The statutes of this state do not provide that a different duty is owed to persons in the three named categories. The only relevant statute is section 1714 of the Civil Code. . . . In spite of this code section . . . our courts, in some cases at least, and in apparent disregard of the section, have followed the common-law rule, which purports to make precise and rigid distinctions as to the duty owed by the owner or occupier to invitees, licensees and trespassers. . . . Such an approach is unrealistic, arbitrary, and inelastic. The point where the duties towards members of each of the classes begins or ends, or where it should begin or end, or where the duty not to act becomes supplemented by the duty to act, is almost impossible of perception. It is no wonder that exceedingly fine distinctions have been developed so that the law is

most confused in this field. (See, note, 13 Cal.L.Rev. 72.) Many cases, and particularly the more recent ones, have in fact applied the general doctrine of negligence embodied in section 1714 of the Civil Code rather than the common-law rigid categories test. . . .

". . . This duty of reasonable care not only extends to situations where the land owner knows of a trespasser's presence, but also to situations where he should know of his presence. Thus, the Restatement of Torts (vol. 2, § 336) declares that if the possessor of land does not know of a trespasser's presence, but 'from facts known to him should know or believe that another is or may be' trespassing, he is 'subject to liability for bodily harm thereafter caused to the trespasser by the possessor's failure to carry on his activities upon the land with reasonable care for the trespasser's safety.' (Many California cases are cited as being in accord in the California annotation to this section.)

"Many courts, in imposing this duty of reasonable care towards trespassers and licensees, have drawn a distinction between active and passive negligence, and have limited the reasonable care test to overt acts of negligence. (See annotations 49 A.L.R. 778.) California has quite clearly adopted this distinction and imposed a ·duty to exercise reasonable care towards known licensees or trespassers so far as active operations are concerned. In the well-reasoned case of *Oettinger* v. *Stewart*, 24 Cal.2d 133, 138 [148 P.2d 19, 156 A.L.R. 1221], cases to the contrary were expressly overruled. See, also, *Herold* v. *P. H. Mathews Paint House*, 39 Cal.App. 489, 493 [179 P. 414]; *Barnett* v. *La Mesa Post No. 282*, 15 Cal.2d 191, 194 [99 P.2d 650]; *Yamauchi* v. *O'Neill*, 38 Cal. App.2d 703, 708 [102 P.2d 365]; *Hamakawa* v. *Crescent Wharf etc. Co.*, 4 Cal.2d 499, 503 [50 P.2d 803].) This rule imposing a duty to exercise reasonable care towards known trespassers so far as affirmative acts are concerned, is in accord with the modern trend of authorities. (See 38 Am. Jur. p. 771, § 109, at p. 773.)"

In the case before us the negligence of defendant was active and not passive.

As for appellant's contention that there was contributory negligence on the part of Fernandez, the jury by its verdict has found to the contrary. The evidence hereinbefore recited sustains such finding. In this connection appellant again argues that plaintiff had no right to be upon the premises, but

there is plenty of evidence to the contrary. The crane was not in operation when he went to the fountain where, as one witness said, ''everybody'' went for water. The steam was kept up on the crane, though it was not in continuous use. Its arm was pointed east. Plaintiff talked to some of its crew, and while he saw two of them on the steel, he thought they were looking for numbers. He did not see the arm of the crane move toward it. His back was turned toward the ribs ·when two of them were knocked over as the third one was lifted. Elliott, the crane man who gave the order to lift the steel, had talked to plaintiff and knew he was at the fountain and but a few feet from the steel. It cannot be said that plaintiff was guilty of negligence as matter of law, and the evidence sustains the finding that he was not so guilty as matter of fact.

■ Appellant's final assignment of error is that the trial court erroneously changed one of the instructions proposed by defendant, before giving it. The instruction as given reads as follows, the portion in italics being the addition made by the court:

''If you find from a preponderance of the evidence that Robert Fernandez was an invitee on the premises under the control of the defendant but that the invitation did not extend to the use of the premises in and about the locomotive crane where it was moving and handling steel, then you are instructed that the said Robert Fernandez was a mere licensee at the time he is alleged to have been in, around and about the locomotive crane and the defendant owed him no duty of seeing that the premises at that place were safe for his attempted use, ~~and your verdict should be for the defendant.~~ (Insert) *but did owe him a duty of using ordinary care in the active operation of its equipment thereon.*''

The only objection made by appellant is that the italicized portion should not have been added; but under the decisions hereinbefore cited, we are satisfied that defendant did owe plaintiff the duty of using ordinary care, and that the portion added by the court was not erroneous.

The judgment is affirmed.

Van Dyke, J., and Deirup, J. pro tem., concurred.