[Civ. No. 8207. Third Dist. Apr. 6, 1953.]

KAREN TESONE, a Minor, etc., Respondent, v. MILTON M. REIMAN et al., Appellants.

Hansen & Barstow and Chester O. Hansen for Appellants.

C. Ray Robinson for Respondent.

VAN DYKE, P. J.—Plaintiff and respondent was at the time of the accident which resulted in her injuries a girl child of the age of 2 years and 2 months. She was injured while on the premises of her grandparents, Milton and Elma Reiman. Alleging her injuries were caused by the negligence of defendant and appellant Laura S. Bennett, an employee of the Reimans, she brought action against the three and recovered a judgment in the sum of $45,000, from which said defendants have all appealed. Basically, the testimony is without conflict. At about 9 o'clock in the morning of December 28, 1950, appellant Bennett was engaged in doing the family ironing for her employers, using for that purpose an ironer or mangle situated in a room called the service room. While she was so engaged, and at about noon, respondent with her mother came to the Reiman residence.

Mrs. Bennett saw the child and her mother enter the home and knew therefore that the child was on the premises. There were present in the residence at that time Elma Reiman and two daughters other than the mother of Karen. The four women began talking and the child was running about the house. A few minutes after the child and her mother arrived Mrs. Bennett left the mangle to take some towels into the kitchen. She there saw the other women and a short conversation ensued. She said she had intended to be gone about a minute. While talking she heard a scream and all went into the service room where it was found that Karen had her hands caught between the roller and the shoe of the mangle. Before they could extricate the child she had been severely burned. When Mrs. Bennett left the mangle the electric cord was plugged into the socket; the hood that could be put over the machine was off; the chair in which she had been sitting was close to the mangle; the mangle had been deactivated through either the manual or the knee control so that the roller was not turning and the shoe was not down on the roller. When found the child was either standing or kneeling on the chair in front of the machine. She was not tall enough to touch the hot shoe or the upper part of the roller without the aid of the chair. The mangle had been reactivated. After the accident and in conversation with Mrs. Reiman, Mrs. Bennett stated that she felt it was her fault because she did not pull the plug. Karen was not in the service room when Mrs. Bennett left and must have entered within the short space of time after Mrs. Bennett left the room and before the scream was heard, a time interval of about one minute.

In support of their appeal the appellants urge that the judgment should be reversed for misdirection of the jury to their prejudice, that the court wrongfully refused instructions based upon the appellants' theory of the case, and that by reason of the instruction given at respondent's request concerning unavoidable accident the trial court in effect removed the issue of negligence from the jury.

The first two assignments have to do with the status of respondent while upon the property of appellants Reiman. We think that under the admitted facts of the case the question of the respondent's status is of no import. At respondent's request the trial court instructed the jury: "It is established in this case that at the time of the accident the plaintiff, Karen Tesone, was present at the home of the

defendants, Mr. and Mrs. Reiman, and on their service porch, by virtue of the invitation, permission, consent and approval, and with the knowledge, of the defendants, Mrs. Bennett and Mr. and Mrs. Reiman. Therefore, it was the duty of the defendant, Mrs. Bennett, to use reasonable care to operate, control, maintain and supervise the ironer or mangle in such a manner as to avoid injuring or endangering the safety of the plaintiff, Karen Tesone." Appellants complain that this instruction removed from the jury the question as to what was the status of respondent and fixed the duty of care toward her as the duty owed to an invitee. The exact status is unimportant here for the reason that the negligence, if any, was in the conduct of active operations on the Reiman property with the presence of the respondent known. Under such circumstances it was the duty of the appellants to use ordinary care to avoid injury to respondent through such operations. We quote the following from *Oettinger* v. *Stewart,* 24 Cal.2d 133, 138-139 [148 P.2d 19, 156 A.L.R. 1221]:

". . . [I]t is now generally held that in cases involving injury resulting from active conduct, as distinguished from condition of the premises, the landowner or possessor may be liable for failure to exercise ordinary care toward a licensee whose presence on the land is known or should reasonably be known to the owner or possessor. (Rest., Torts, § 341; Prosser on Torts [1941], 630; 45 C.J. 803-805.) In Prosser on Torts, *supra,* the author explains: 'Some courts have gone so far as to say that there is no duty to a licensee other than to refrain from inflicting wilful or wanton injury upon him. As in the case of trespassers, however, an increasing regard for human safety has led to a retreat from this position. It is now generally held that as to any active operations which the occupier carries on, there is an obligation to exercise reasonable care for the protection of a licensee. He must run his train, operate his machinery, or back his truck with due regard for the possibility that the permission given may have been accepted and the guest may be present.' The more recent California decisions have adopted this rule. (Citing cases.) The cases cited herein suggesting that a lesser standard of care is applicable where injury results from active conduct of the landowner or possessor are inconsistent with the later decisions and must be disapproved."

Under the circumstances here we see no error in the instruction insofar as the points in contention be concerned. True, it does not distinctively define invitees and licensees

and set up a standard of care owed to each. Where the action is based on negligent conduct rather than on the condition of the premises and the standard of care therefore is that of ordinary care to avoid injury it would only confuse the jury to enter into the subject of status.

■ Appellants contend that they were entitled to have the jury instructed upon their theory of the case and that they submitted proper instructions to that end. The instructions requested defined invitees; declared that a social guest would not fall within that classification and was regarded in law as being only a licensee; and stated that where the licensee's presence was known to the licensor or ought to have been so known the licensor was bound to exercise ordinary care to avoid injuring the licensee by an overt act. This overt act was especially defined in the instruction as meaning some active negligence as distinguished from passive omission to alter some condition on the premises existent when the licensee entered, as to which condition the licensee assumed the risks incident thereto. Here again what we have said heretofore demonstrates that there was no error in refusing the instruction, since the case was not one wherein any distinction would be made dependent upon the status of respondent while upon the property of appellants. (*Fernandez* v. *American Bridge Co.*, 104 Cal.App.2d 340, 344-345 [231 P.2d 548].)

■ Appellants contend that prejudicial error amounting to a miscarriage of justice was committed by the trial court in the giving at respondent's request of the following instruction: "I instruct you that the evidence in this case establishes as a matter of law that the defendant, Mrs. Bennett, could have avoided this accident by the exercise of reasonable care under the circumstances. Therefore, the accident was not unavoidable and you will not consider the matter of unavoidable accident." For the giving of this instruction the judgment must be reversed. By other instructions the court had told the jury that it was the duty of Mrs. Bennett to use reasonable care to avoid injuring the respondent; that it was ordinarily necessary for Mrs. Bennett in operating the ironer to exercise greater caution for the protection and safety of respondent because of her tender years than would have been necessary for adult persons possessing normal and mature faculties; that the presence of the child near the ironer was in itself a warning requiring greater caution for her safety and that Mrs. Bennett owed

a duty to use reasonable care to anticipate the thoughtlessness and impulsiveness of respondent. When, added to these instructions, the trial court told the jury that the evidence in the case established as a matter of law that Mrs. Bennett could have avoided the accident by the exercise of reasonable care under the circumstances the issue of negligence or none was removed from the jury with the result that there has been no real trial thereon. The rationale of the instruction is this: As a matter of law the accident could have been avoided by the use of ordinary care; it happened, therefore, as a matter of law, ordinary care was not exercised.

The error is demonstrated with equal ease if we consider the meaning of the term "unavoidable accident." By this term is not meant an accident that could not be avoided at all. ■ The term simply means an accident which is caused by something other than the actionable negligence of the parties involved. (*Parker* v. *Womack*, 37 Cal.2d 116, 120 [230 P.2d 823].) ■ The so-called defense of inevitable or unavoidable accident amounts to nothing more than a denial by the defendant of actionable negligence. ■ It need not be specially pleaded and is raised by general denial. (*Id.* 121) When therefore the trial court said that as a matter of law the jury were not to consider the defense of unavoidable accident it told them it was not to consider the defense raised by the denial of negligence.

■ Respondent contends that prejudice was not suffered because Mrs. Bennett was negligent as a matter of law. We do not agree. We think the issue was one of fact which the jury was required to pass on. Mrs. Bennett was operating the mangle in the usual course of her duties as an employee of the Reimans. ■ She desired, in the course of those duties, to place some finished ironing in the kitchen, expecting to be gone upon this errand about a minute. The child was not then in or near the service room and was under the supervision of her mother. Before the child could be injured she would have to do the following things: 1. Enter the service room; 2. Get up onto the chair near the machine; 3. Activate the roller either by knocking against the knee control or the manual control, and, 4. Place her hands between the roller and the shoe. Under such circumstances it was for the jury to say whether or not Mrs. Bennett was negligent in leaving the mangle in the condition in which she did leave it.

The judgment is reversed.

Peek, J., and Schottky, J., concurred.