[Civ. No. 17503. First Dist., Div. One. Dec. 30, 1957.]

CREED B. HABERLIN, Appellant, v. PENINSULA CELEBRATION ASSOCIATION (a Nonprofit Corporation), Respondent.

Reginald G. Hearn for Appellant.

Daniel J. O'Brien, Jr., and Daniel J. O'Brien III for Respondent.

BRAY, J.—After entry of judgment on verdict in favor of plaintiff in the sum of $24,728, the trial court granted a motion for new trial on two grounds, insufficiency of the evidence and misconduct of the jury. Plaintiff appeals.

The question presented is—was there substantial evidence to support a contrary verdict?

### FACTS

The action arose out of injuries received by plaintiff by being struck by a horse during a rodeo celebration at Redwood City, conducted by defendant, a nonprofit corporation comprised of business men and various community service organizations. The complaint charged defendant with negligence "in inviting and permitting plaintiff to purchase food and refreshments in an unprotected area ..." The answer denied

negligence and affirmatively pleaded contributory negligence and assumption of risk. On the Fourth of July morning plaintiff with his wife and two minor children entered the rodeo grounds near the refreshment area where plaintiff was later injured for the purpose of delivering certain trophies. Because of the trophies the guard let him in to the restricted area. This is on the far side of the race track from the grandstand. Here a flatbed truck from which refreshments were sold by a concessionaire was pulled up adjacent to the track. This area is reserved for parade and rodeo participants and their horses and their families. There is also a small grandstand which is normally used by participants and their families. The truck was in an opening in the track fence, there being only two poles between the truck and the track. Entry to the track is through this opening and horsemen entering or leaving the track use it. They proceed on either side of the truck. The carnival and concession area including refreshment stands other than the one mentioned are over on the grandstand side of the track. The parade ended before noon and more than a hundred horses were standing around in this area or being ridden through it. During the noon hour there is no rodeo activity and the horsemen eat their lunch around this refreshment stand. The accident occurred more than an hour before the rodeo was to begin, and at a time when the track is customarily not used. After delivering the trophies plaintiff went outside, purchased tickets and with his wife and children reentered the grounds at the public entrance, going to the main grandstand. Intending to get something to eat at the refreshment truck he had noticed when he first entered the grounds, plaintiff left the grandstand, crossed the track and entered the refreshment truck area. Persons not having anything to do with the show were not permitted in this area. Plaintiff knew this. In that area there were some 30 to 50 people and a number of horses. Some persons were sitting on their horses, others standing next to their horses. Some persons rode up to the truck, bought refreshments and then rode back. After purchasing refreshments plaintiff stepped back from the truck and was talking to someone. The next thing he remembered he was coming to on the ground. He was hit by a horse on which one of the rodeo musicians was riding. There was evidence that the horse came running from the track at high speed ("flying," one witness said). The rider was just hanging on with his feet out of the stirrups. Plaintiff was a partner in two saddle

shops which carried everything for the horseman. Plaintiff testified that he belonged "to these various associations." It is not clear whether or not that included defendant. He made business contacts by meeting with horsemen. A reasonable inference from the evidence is that in addition to desiring refreshment he went to the area to keep up his contacts with horsemen for business purposes. He was familiar with horses and classified himself as something more than an amateur but not an expert horseman. He had participated in trail rides and in roping activities in a rodeo. He knew that there were many horses in the area.

### INSUFFICIENCY OF THE EVIDENCE

The rule applicable to this appeal is well settled. ■ "In passing upon a motion for a new trial based upon the insufficiency of the evidence, it is the exclusive province of the trial court to judge the credibility of the witnesses, determine the probative force of testimony, and weigh the evidence [citations]. ■ In considering the sufficiency of the evidence upon such motion the court may draw inferences opposed to those drawn at the trial [citation], and where the only conflicts consist of inferences deduced from uncontradicted probative facts, the court may resolve such conflicts in determining whether the case should be retried [citation]. ■ It is only where it can be said as a matter of law that there is no substantial evidence to support a contrary judgment that an appellate court will reverse the order of the trial court. [Citation.]" (*Brooks* v. *Metropolitan Life Ins. Co.*, 27 Cal.2d 305, 307 [163 P.2d 689].)

■ The parties engage in some discussion as to whether plaintiff was an invitee or a licensee. The trial judge considered plaintiff to be an invitee as he refused to give defendant's requested instruction on "licensee" noting "plaintiff was invitee." Among other evidence on the subject it appears that plaintiff had paid admission, he was present at the refreshment stand provided for by defendant, partaking of refreshments. Defendant's manager had expressly provided that plaintiff be given access to this area. Clearly plaintiff was an invitee. ■ Thus defendant's duty towards him was to maintain the property in a reasonably safe condition and to exercise reasonable care to protect him from injury. ■ Defendant is liable for harm caused by any dangerous condition on the premises, whether natural or artificial, if defendant knew of it, or by the exercise of reasonable care,

could have discovered it. ■ Defendant's duty would be performed by either warning of the danger, if any, or by using ordinary care to keep the premises in a reasonably safe condition. But defendant was not required to warn plaintiff of obvious dangers, as the defendant was entitled to assume that plaintiff would perceive the obvious by use of his senses.

■ We cannot say as a matter of law as we would be required to do in order to reverse the order granting a new trial that defendant was negligent in placing the refreshment truck in a gap in the track fence. The truck was for the convenience and benefit of the horsemen, so that they could purchase refreshments while on horseback, as well as on foot, and while waiting for the rodeo to start. The area also allowed performers coming off the track ready access to the truck. In the absence of evidence (and there was none) that horses using the track would be ridden off the track at high speed one of the reasonable conclusions that very well could be drawn from the facts of the case is that defendant had the right to assume that the openings to the track made the area no more dangerous than the congregation of horsemen with their horses did, and that the persons using the area would know that there was always a possibility that out of the many horses gathering there some might become fractious. So far as horses being ridden off the track out of control is concerned, there was no evidence that this had happened before. While there was evidence that no rodeo or track events ever took place during the noon hour, Miss Duffy, one of the morning parade participants, testified that she was riding her horse at a walk around the track immediately prior to the time of the accident. In providing this area for horses and their riders, defendant had no more notice of the possibility of this particular type of accident than did plaintiff. Both, of course, knew that in an area where horses and men intermingle there is always danger of a horse and man coming into contact with one another, but this danger was a necessary risk in order to provide the horsemen with the type of service they desired, and a risk which plaintiff with his background well could be found to have assumed. Refreshment stands for the general public protected from the horses were located elsewhere on the grounds. Plaintiff was fully aware of this fact and the purpose for which the restricted area was used. For the general public to go from the grandstand to this refreshment area they would have to pass through fences and by approximately three deputy sheriffs guarding gates. Plaintiff, however, cut across the track.

We see no reason why the rule of *Quinn* v. *Recreation Park Assn.*, 3 Cal.2d 725 [46 P.2d 144], is not applicable here. There the circumstances were actually more strongly in favor of the plaintiff than those here. The plaintiff, a 14-year-old girl, went to the baseball park, and asked the ticket seller for a screened seat near first base and not behind home plate. She was ushered, however, to an unscreened seat near first base, all of the screened seats in that area being occupied. She protested but was told she would have to sit there as standing she was obstructing the view of other spectators, the game having started. The usher stated that he would see what could be done about obtaining a screened seat for her. There were unoccupied screened seats behind home plate but she wanted to be near first base. About the fourth inning she was struck and injured by a batted ball. She had attended professional games at the same ball park about twice a week for two seasons. The court held that it is well settled that the duty imposed by law on a baseball park management is to exercise ordinary care to protect its patrons, and that such duty is met when screened seats are provided for as many as reasonably may be expected to call for them on any ordinary occasion. In our case the defendant provided ample protected refreshment areas. The court in the Quinn case said further that a spectator who chooses to occupy an unscreened seat, or is unable to obtain one, assumes the risk of being struck by thrown or batted balls, and if injured thereby, he is precluded from recovering damages therefor. In our case the facts would have justified a finding that plaintiff, with his experience of horses and riders, went into the area with full knowledge of the danger attached, and assumed the risk of injury. Such a finding alone would justify a judgment in favor of defendant.

While plaintiff knew that there were many horses in the immediate area and that he was standing where horses would sooner or later be going off the track, he perhaps did not know of the particular danger which occurred, namely, a horse coming off the track out of control at the noon hour. But that danger was equally unknown to defendant. This situation is similar to that in *Dingman* v. *A. F. Mattock Co.*, 15 Cal.2d 622 [104 P.2d 26], where the plaintiff, an invitee of the defendant contractor, was walking on a 2 x 4 placed by defendant across an open stairwell when it broke, throwing the plaintiff to the ground. The court held that the defendant was not liable to the plaintiff as there was no evidence that the

defendant had any more knowledge of the condition of the scantling than did the plaintiff. The court further pointed out that the owner of premises is not liable for injuries received by an invitee even in a situation where the dangerous condition of the premises is known to the owner, if that condition is known to the invitee. In our case the danger of injury to persons in the area from horses was as well known to plaintiff as to defendant, and if it be that there is a difference between injury by horses in the area and injury by a horse coming off the track, the danger of such an injury by a horse out of control was just as much unknown to defendant as to plaintiff. In *Mautino* v. *Sutter Hospital Assn.*, 211 Cal. 556 [296 P. 76], where a private nurse attending a patient in the defendant's hospital slipped on a floor which she knew was slippery, the court said: " ' ". . . There is no liability for injuries from the dangers that are obvious, or as well known to the person injured as to the owner or occupant." ' " (P. 561; see also *Blodgett* v. *B. H. Dyas Co.*, 4 Cal.2d 511 [50 P.2d 801].)

*Richter* v. *Adobe Creek Lodge*, 143 Cal.App.2d 514 [299 P.2d 941], holds that the liability of an owner to provide against injury to an invitee from the act of another is based upon the fact that the landowner has notice of prior conduct from which he could reasonably anticipate that such injury might occur. That was a case of boys pushing a piano off a stage and injuring the plaintiff. The court listed a number of California cases supporting the same rule and involving the following situations—customer hit by swinging door when leaving store; a plaintiff injured going down an escalator by small boys who were attempting to ascend; theatre patron kicked in back by intoxicated person; customer in aisle of store struck by child riding tricycle that was on display.

See also *Porter* v. *California Jockey Club, Inc.*, 134 Cal.App. 2d 158 [285 P.2d 60], where a patron at a race track was injured when another patron, running upstairs, collided with her. In that case even though the evidence established that spectators were in the habit of congregating on the stairways at the start of each race and bettors were in the habit of running to place bets at the last moment, the court held that as there was no evidence of any prior negligent conduct on the part of even one spectator or of any circumstance that would put the race track owner on notice that one spectator would run violently into another, there was no duty upon the owner to take steps to guard against such contingency. The reason-

ing of that case and those above mentioned applies to our case. There was nothing which had occurred at the rodeo grounds which would have placed any duty upon the defendant to guard against horses out of control running off the track.

The evidence in this case fails to establish negligence of defendant as a matter of law. As questions of fact the evidence would have justified a finding that defendant was not negligent or a finding that plaintiff assumed the risk of danger from horses in the restricted area or a finding that if defendant was negligent plaintiff was guilty of contributory negligence. We, of course, do not know whether the trial court in granting the new trial found against plaintiff on all of these elements. An adverse finding on any one would have been sufficient to support the granting of the new trial.

### CHANCE

The court granted the new trial on the additional ground that the verdict was a ''chance'' one. Inasmuch as the ground above discussed fully supports the action of the court, we deem it unnecessary to discuss the matters connected with this latter ground.

The order is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied January 29, 1958, and appellant's petition for a hearing by the Supreme Court was denied February 26, 1958.