[Civ. No. 20299. First Dist., Div. One. July 24, 1963.]

FRANK NIGRO, Plaintiff and Appellant, v. WEST FOODS
OF CALIFORNIA, Defendant and Respondent.

568

Boccardo, Blum, Lull, Niland, Teerlink & Bell, Edward J. Niland, Norman W. Saucedo and William G. Kinder for Plaintiff and Appellant.

Bruno & Gassett and Simon J. Katzen for Defendant and Respondent.

SULLIVAN, J.—Plaintiff appeals from an adverse judgment entered on a jury verdict in an action for damages for personal injuries.

On June 3, 1960, plaintiff Frank Nigro, 77 years of age, went to defendant's place of business to buy compost for his garden. He had been there on several previous occasions. This was his second trip on the above date. The compost was spread out over a portion of the defendant's property in order to dry. To purchase compost, customers first went to the main office of the plant, paid for the desired amount, and received a slip or receipt which they took to the drying area where their vehicles were loaded. Such loading was usually done near the compost stockpile at points designated by employees in attendance. There were no signs or warnings restricting the customers to any particular area. On the day of the accident here involved plaintiff followed the above procedure.

Having paid for the compost, plaintiff drove his panel truck and trailer to the vicinity of the compost stockpile, parked his vehicle and went up to defendant's employee Hathaway who was discing some of the compost with a Fordson tractor. Hathaway finally stopped his tractor by a bucket loader and

walked over to the plaintiff who gave Hathaway his receipt and told the latter that he wanted "old" compost. To get this, Hathaway had to "knock some off the side" of the pile and break it up by discing it. He told plaintiff: "You stay here and leave your truck here and I'll bring it out to you." Hathaway then returned to his tractor. Plaintiff followed him to the front of the compost pile and stood near the mechanical bucket loader. Hathaway did not realize that plaintiff did this until he was starting "up on the hill" of the compost when he looked back and saw plaintiff "standing between the wheels on the bucket loader."

Although the entire pile of old compost reached a height of 15 to 16 feet, that portion which Hathaway planned to disc was about 5 feet high. It was his intention to circle this area a few times counterclockwise with the tractor pulling a disc so as to "grind it up a little." Hathaway proceeded up the side of the pile on the tractor, "got just up to where I intended to go, and started to make a turn to the left" when the tractor stalled. He increased the power so as to pick up the disc (operable by a lever) "put my foot on the left brake and gave it some gas" so that he could return to the ground level and make another pass at the compost.

As soon as the disc became free, Hathaway drove the tractor off the side of the hill making a left turn as he did so. As Hathaway came down, the plaintiff, who had moved from his position at the loader, suddenly appeared in the path of the tractor. Hathaway immediately "climbed on the other brake," the left brake being already engaged so as to make the left turn. Plaintiff tried to get out of the way but was struck by the righthand edge of the radiator and thrown to the ground. Hathaway testified that at no time did he come near striking the loader where plaintiff had been standing and that the path of the tractor avoided the loader. The tractor was in second gear and was not out of control at any time. Its speed at the time was about 8 to 10 miles per hour. Plaintiff stated that the point of impact was about 8 feet from the bucket loader.

Hathaway also testified that he had been operating this particular equipment for about two months. There was some difficulty in steering the tractor because the front was not quite heavy enough to support the weight of the disc in the back. As a result, the weight was on the rear wheels and the smaller front wheels would have a tendency to rise. He was able to control the tractor's direction by the use of indepen-

dently operated brakes on each of the rear wheels, an application of the left brake effecting a left turn, and the right brake, a right turn. He had previously reported this condition to his superiors two or three times, suggesting that weights be put in front, but nothing had been done to correct the condition.

Defendant's employee Henry who occasionally drove the tractor testified to the same effect with respect to the tractor's condition, as did defendant's service manager Hewitt who had charge of the shop and equipment. Hewitt on examination by defendant's counsel testified that there were two means of steering—one by the ordinary steering wheel and gear and the other by the brakes on the rear wheels which effected short turns: "You can steer as easily with one as you can with the other." According to Hewitt, the steering wheel on the tractor was for "mild guiding" or "small steerage." Both Hathaway and Henry had called the condition of the tractor to the attention of defendant's shop and service personnel and had suggested that weights be placed on the front of the tractor. Hewitt acknowledged that Hathaway had told him about the condition but stated that he did not correct it because he "didn't feel that it was in such a condition that it was justified at the time."

The complaint alleged, *inter alia,* that the "defendants . . . so negligently owned, maintained and operated their said Fordson wheel tractor that the same collided with the body of the plaintiff." The answer denied all the material allegations of the complaint and alleged contributory negligence on the part of plaintiff.

Plaintiff contends before us (1) that the evidence is insufficient to sustain the verdict; and (2) that the court committed prejudicial error in refusing one of plaintiff's instructions.

■■ Since the jury rendered a general verdict, it is clear "that such a verdict imports findings in favor of the prevailing party on all material issues [citations] ; that if the evidence supports implied findings on any set of issues which will sustain the verdict it will be assumed that the jury so found [citation] ; that the court on appeal does not have to speculate on what particular ground the jury may have found in favor of the prevailing party [citation] ; . . ." (*Thomson v. Casaudoumecq* (1962) 205 Cal.App.2d 549, 555 [23 Cal. Rptr. 189].) ■ The scope of our review is to determine

whether there is any substantial evidence, contradicted or uncontradicted, supportive of the jury's conclusion. (*Crawford v. Southern Pac. Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]; *Primm v. Primm* (1956) 46 Cal.2d 690, 693 [299 P.2d 231].)

■ Contrary to plaintiff's claim, the evidence was in conflict in respect to Hathaway's operation of the tractor. Although there was evidence of difficulty on steering the tractor when the discs were in a raised position, there was also ample evidence that it could be just as easily steered by application of the brakes, that on the occasion in question it was not out of control, that it was being steered in the intended direction and that it would not have come near the loader where plaintiff had been standing. The record therefore contains substantial evidence from which the jury could have concluded that the tractor was being carefully operated and that the difficulty in steering was of no consequence since the tractor could be properly steered by using the rear brakes. The jury's implied finding of no negligence on the part of defendant is supported by the evidence.

■ Furthermore, the jury could have concluded that, while the defendant was negligent, the plaintiff was guilty of contributory negligence proximately causing the accident. Hathaway, who was engaged in discing operations in the area, first told the plaintiff to stay by his truck. Instead, plaintiff went over to the loader and thus closer to where the tractor and disc were being operated. The jury could have concluded that there was no need for a customer to enter this particular area where equipment was in motion and that a man of ordinary prudence would remain in the parking area to which Hathaway told plaintiff he would bring the compost. But beyond these considerations, the jury could have concluded that plaintiff, having once taken his position by the loader, would not have been injured if he had remained there since there was no danger that the tractor would collide with or come close to the loader. Despite the fact that plaintiff testified that he left his position by the loader only when he saw the tractor "on top of" him and about to "catch . . . [him] to the corner and against the . . . [loader]," the jury could have concluded that the plaintiff under all the circumstances did not act with due care in leaving the relative safety of the loader. We think that it is apparent that there is sufficient evidence to support the implied finding of plaintiff's contributory negligence.

Plaintiff's claims that the defendant was negligent as a matter of law and that the plaintiff was not guilty of contributory negligence as a matter of law are entirely without merit. ■ Generally speaking the questions of negligence, contributory negligence and proximate cause are questions of fact for the jury. (*Austin* v. *Riverside Portland Cement Co.* (1955) 44 Cal.2d 225, 234 [282 P.2d 69]; *Wahlgren* v. *Market Street Ry. Co.* (1901) 132 Cal. 656, 663 [62 P. 308, 64 P. 993]; *Barry* v. *Bruce* (1962) 200 Cal.App.2d 335, 337-338 [19 Cal. Rptr. 518]; *Negra* v. *L. Lion & Sons Co.* (1951) 102 Cal.App. 2d 453, 458 [227 P.2d 916].) ■ As we have pointed out, the evidence relevant to these issues was in conflict. Therefore, as we need not elaborate, a valid argument simply cannot be made that the only reasonable hypothesis is that the defendant was negligent and the plaintiff free of contributory negligence and that reasonable and sensible men can draw only that conclusion and none other from the evidence presented. (*Wahlgren* v. *Market Street Ry. Co., supra; Williams* v. *Pacific Gas & Elec. Co.* (1960) 181 Cal.App.2d 691, 701-702 [5 Cal.Rptr. 585].)

We turn to plaintiff's second contention. It is claimed that the court committed prejudicial error in failing to instruct specifically on the duty of defendant with regard to the maintenance of its tractor.

It is not disputed that plaintiff was defendant's invitee. Defendant's duties to him are well established by law. ■ As this court stated in *Brown* v. *San Francisco Ball Club, Inc.* (1950) 99 Cal.App.2d 484, 486 [222 P.2d 19]: "The applicable general principle is that the owner of property, insofar as an invitee is concerned, is not an insurer of safety but must use reasonable care to keep his premises in a reasonably safe condition and give warning of latent or concealed perils. ■ He is not liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care. [Citations.]" (See also *Pauly* v. *King* (1955) 44 Cal.2d 649, 653 [284 P.2d 487]; *Haberlin* v. *Peninsula Celebration Assn.* (1957) 156 Cal.App.2d 404, 407-408 [319 P.2d 418]; *Louie* v. *Hagstrom's Food Stores, Inc.* (1947) 81 Cal.App.2d 601, 606 [184 P.2d 708]; Prosser, Law of Torts (2d ed. 1955) p. 459.) ■ Such duty is not limited to conditions actually known by the owner to be dangerous, but extends to those which may be found to be so by the exercise of reasonable care. (*Blumberg* v. *M. & T. Inc.* (1949) 34 Cal.2d 226, 229 [209

P.2d 1]; *Mondine* v. *Sarlin* (1938) 11 Cal.2d 593, 597 [81 P.2d 903]; *Louie* v. *Hagstrom's Food Stores, supra*; *Haberlin* v. *Peninsula Celebration Assn., supra*. The owner's duty to the invitee is adequately discharged either by exercising ordinary care to keep the premises in a reasonably safe condition or by giving a warning adequate to enable the invitee to avoid the danger. (*Chance* v. *Lawry's, Inc.* (1962) 58 Cal.2d 368, 373, 380 [24 Cal.Rptr. 209, 374 P.2d 185]; *Blumberg* v. *M. & T., Inc., supra*; *Haberlin* v. *Peninsula Celebration Assn., supra*.) But the owner is not required to warn the invitee of a danger so obvious that the invitee could be reasonably expected to see it. (*Haberlin* v. *Peninsula Celebration Assn., supra*.)

However the premises may be unsafe because of an *activity* thereon rather than a mere *defect* in their physical condition. A difference must therefore be noted between those situations involving injuries resulting from a defective condition and those involving injuries resulting from the active conduct of the owner or his employees. (See *Oettinger* v. *Stewart* (1944) 24 Cal.2d 133, 138 [148 P.2d 19, 156 A.L.R. 1221].) The owner may have discharged his duty to the extent of maintaining a reasonably safe condition of the premises. It is his conduct on such premises which may be dangerous. Under such circumstances, his duty is to use ordinary care to avoid injury to the invitee through his operations. (*Oettinger* v. *Stewart, supra*; *Tesone* v. *Reiman* (1953) 117 Cal. App.2d 211, 214 [255 P.2d 48].)[1] In *Tesone, supra*, objection was made to an instruction, stating the duty owed an invitee in a case where a child visiting her grandparents was injured by an electric mangle, on the ground that the determination of whether she was an invitee or licensee had been removed from the jury. The court, relying upon *Oettinger, supra*, said: "The exact status is unimportant here for the reason that the negligence, if any, was in the conduct of active operations on the Reiman property with the presence of the respondent known. Under such circumstances it was the duty of the appellants to use ordinary care to avoid injury to re-

---

[1] In *Oettinger* v. *Stewart, supra*, the court in defining the duty owed to a licensee stated that "it is now generally held that in cases involving injury resulting from active conduct, as distinguished from condition of the premises, the landowner or possessor may be liable for failure to exercise ordinary care toward a licensee whose presence on the land is known or should reasonably be known to the owner or possessor. (Rest., Torts, § 341; Prosser on Torts (1941) 630; 45 C. J. 803-805.)" (24 Cal.2d at p. 138.)

spondent through such operations. . . . Where the action is based on negligent conduct rather than on the condition of the premises and the standard of care therefore is that of ordinary care to avoid injury it would only confuse the jury to enter into the subject of status.'' (117 Cal.App.2d at pp. 214-215.)

With these principles in mind we turn to the pertinent instructions. After giving extensive instructions defining and explaining negligence, ordinary care, proximate cause and contributory negligence, the court instructed the jury as to the duty of an invitor to an invitee. This last instruction[2] was given at the request of and in the language as proposed by defendant. It was the only instruction given on the subject of the invitor's duty. After giving such instruction, the court thereupon instructed the jury to determine whether the defendant was guilty of negligence proximately causing plaintiff's injury, and, if so, whether the plaintiff was guilty of contributory negligence proximately causing the injury.

The instruction given on the subject of the invitor's duty (see footnote 2, *ante*) appears to be BAJI No. 213c except for the omission of the following language at the end of the first sentence: ''and it also is the invitor's duty to use ordinary care to keep the premises in a condition reasonably safe for the invitee. . . .'' Plaintiff makes no claim that the court erred in giving such instruction. Nor do we think he could properly do so. The instruction is a correct statement of the law. (See *Tesone* v. *Reiman, supra,* 117 Cal.App.2d 211, 214.)

However, plaintiff claims error in the refusal of the court to give the following instruction: ''It was the duty of the defendant, West Foods of California, a corporation, in the conduct of any active operation on it's [*sic*] property, to use ordinary care to avoid injury to the plaintiff, Frank

---

[2]The instruction is as follows: ''Now, toward an invitee it is the duty of the invitor, in the conduct of any active operations on the property, to use ordinary care to avoid any injury to the invitee. But the responsibility of one having control of the premises is not absolute. It is limited to the performance of certain duties defined in my instructions. If there is danger attending upon the entry, or upon the work which the invitee is to do on the premises, and if such danger arises from conditions not readily apparent to his senses, and if the occupant has created such conditions or has actual knowledge of them, or if they are discoverable by it in the exercise of ordinary care, it is it's duty to give reasonable warning of such danger to the invitee. The occupant is not bound to discover defects which reasonable inspection would not disclose, and it is entitled to assume that the invitee will perceive that which would be obvious to him upon the ordinary use of his own senses. In brief, no duty exists to give the invitee notice of an obvious danger.''

Nigro. It was further the duty of the said defendant to use ordinary care in the inspection, maintenance, and repair of the Fordson tractor and disc to the end that it would be reasonably safe when used. This latter duty which I have just defined extends to any person who may be within the area of danger from the use of said Fordson tractor and disc and whose presence there is within a range of probability forseen [*sic*] by the said defendant corporation, and that would be forseen [*sic*] by said defendant corporation in the exercise of ordinary care.''

The gist of plaintiff's complaint is that the instruction which was given related only to the duty to warn of known dangers and did not advise the jury of the defendant's duty to inspect, maintain and repair its tractor.

We may summarize in terms of the invitor's duty the applicable legal principles already discussed by us, as follows: (1) as respects the *condition* of the invitor's premises, a duty to exercise ordinary care to keep the premises in a reasonably safe condition or to warn the invitee of dangers not obvious; and (2) as respects the active *conduct* of the invitor or his employees, a duty to exercise ordinary care to avoid injury to the invitee.

The jury were told of this latter duty by the first sentence of the instruction given which stated that ''it is the duty of the invitor, in the conduct of any active operations on the property, to use ordinary care to avoid any injury to the invitee.'' This was a proper instruction since under the evidence if defendant could be held responsible for plaintiff's injuries at all, it was because such injuries resulted from the active conduct of defendant's employee Hathaway in the operation of the tractor rather than from any defective condition of the premises themselves. The first sentence of plaintiff's refused instruction contained a statement of the above duty in substantially the same language and obviously would have added nothing.

However the second sentence of the proposed instruction, which as we apprehend is the heart of the matter, declares a duty on defendant's part ''to use ordinary care in the inspection, maintenance, and repair'' of the tractor and disc. Beyond that the instruction does not go. It therefore appears that, in the place of a statement in broad terms of a duty to exercise ordinary care to keep the premises in a reasonably safe condition, plaintiff proposes a narrower substitute relating to the condition of the tractor. In our view, the court was under

no duty to so advise the jury. As we have already pointed out, under the evidence in the case, plaintiff's injuries did not result from any condition of the premises. Since plaintiff did not go upon or use the tractor or disc, it cannot be said in the same sense that his injuries resulted from the condition of the tractor. It is clear that his injuries resulted from the operation of the tractor. Indeed, under any view of the evidence, there does not appear to have been either a defective tractor or a disc requiring repair. If there was any responsibility on defendant's part, it derived from the *use* or *operation* of both of these pieces of equipment conjointly under circumstances causing the front wheels to be lifted up when the disc was raised.

The jury was properly instructed that in the course of any active operations, which obviously included Hathaway's discing of the compost, the defendant was bound to use ordinary care to avoid injuring the plaintiff. They were also fully advised as to the meaning of ordinary care, negligence and proximate cause. They were fully and fairly instructed on the general rules of liability for negligence. In substance, they were told that if the defendant negligently operated the tractor, and such negligence proximately caused the plaintiff's injuries, and if the plaintiff was free of contributory negligence proximately causing the injury, they should find for the plaintiff. This was the essence of plaintiff's claim as alleged in his complaint. Under the circumstances no error was committed in refusing plaintiff's instruction.

The judgment is affirmed.

Bray, P. J., and Molinari, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 18, 1963.