TOLEDO REAL ESTATE AND INVESTMENT CO. v. LESTER PUTNEY, A MINOR, ETC.

1. DEFECTIVE PASSAGE WAY ON TENEMENT BUILDING.

The owner of a flat or tenement building is not liable for injuries to a child of a tenant of an adjoining building, by falling from an elevated passage way or gallery running along the back of both buildings, owing to a defect in the railing of the gallery on the building owned by him, unless he retained possession or control of such gallery or passage way.

2. LANDLORD LIABLE IF HE RETAINED POSSESSION.

If the owner of such building at the time of such accident retained the possession or control over the passage way, and knowingly permitted the occupants of the adjoining building to use such passage way, and knew that there were young children in the families of such occupants, and left the railing on such passage way in a defective condition, by reason of which such child fell off and was injured, he is liable therefor.

3. DUTY OF BUILDING OWNER TO GUARD AGAINST INJURIES.

If such passage way was habitually used by the occupants of the adjoining building, and this was known to and acquiesced in by the owner of the building who had control of the passage way, it was his duty to use ordinary care to keep such passage way in a safe condition for use by the children of such adjoining tenants, if he knew or had reason to expect that such children would pass along such passage way or use it for any purpose.

4. MAINTENANCE OF GATES—LANDLORD NOT LIABLE.

But if such owner, in good faith, endeavored to keep such passage way closed against the occupants of the adjoining building, and if, by the erection and

Investment Co. v. Putney.

maintenance of a suitable gate or otherwise, he gave notice to the occupants of the adjoining building that they would not be permitted to use such passage way, he would not be regarded as acquiescing in the use thereof and would not be liable for such injuries, although, at times such gate, through .the acts of other parties, was unfastened and opened.

**5. NEGLIGENCE—QUESTION FOR JURY.**

In an action by a child between two and three years old against the owner of a building for injuries by falling through an opening in a railing on a passage way or gallery fourteen feet from the ground extending along the back of such building, whether leaving two pickets out of the railing, thus leaving a space wide enough for the child to fall through, is negligence, on the part of such owner, is a question for the jury.

**·6. RULE AS TO REVERSAL.**

A reviewing court should not reverse unless the verdict is so clearly unsupported by the weight of the evidence as to indicate some misapprehension, or mistake, or bias on the part of the jury, or a willful disregard of duty.

**7. INFANTS—CONTRIBUTORY NEGLIGENCE.**

A child between two and three years of age is too young to be charged with contributory negligence.

**·8. IMPUTED NEGLIGENCE NOT RECOGNIZED.**

The doctrine of imputed negligence is not recognized in Ohio.

ERROR to the Court of Common Pleas of Lucas county.

HULL, J.

This action comes into this court on a petition in error. The plaintiff below, Lester Putney, a minor under the age of three years, brought an action in the court of common pleas against the Toledo Real Estate & Investment Company, the plaintiff in error, to recover damages which he claimed he had sustained on account of the negligence of the plaintiff in error, the defendant below.

On Monroe street in the city of Toledo, between the streets of Michigan and Ontario, is a block of buildings extending the entire length between those two streets. About one-half of this block, the west half, was owned, at the time complained of, by Mr. Libby, and the east half, that is the side towards Ontario street, was owned by the plaintiff in error. The ground floor of this block was used for stores and business purposes. The second floor was used for residence purposes, and in the entire building, at the time of the injury complained of, April 1, 1898, there lived eleven families; six in that part of the building owned by the plaintiff in error and five in the part owned by Mr. Libby. There was a front entrance to this floor, and at the rear, extending the whole length of the building was a gallery or platform, at the outer edge of which was a walk or passage about three feet wide; and leading up to this gallery from the rear there were two flights of stairs, one on the Libby side and one on the other side, and there was on the Michigan street end and also on the Ontario street end a flight of stairs for those coming into the building from the street. At the outside of this walk was a fence or balustrade, consisting of a rail on the top and pickets or bannisters going up and down and another rail on the bottom.

.Plaintiff alleged in his petition that he resided with his parents on the Libby side of this building, that is, the side towards Michigan street, with his father; that this walk or passage way was used by all of the tenants in common as a place of entrance, a place for the tenants to go back and forth, and for persons delivering goods there of various kinds— icemen, butchers, grocers, etc., and that the tenants and their children were in the habit of going back and forth upon the walk, and that the children were in the habit of playing there at will, to the knowledge of

defendant and with its permission. And the plaintiff alleges that the defendant, negligently had permitted two of the pickets of this fence, on the part of the building owned by the Toledo Real Estate & Investment Company, to be broken out of the fence and negligently permitted them to remain out, so as to make an opening in the fence or railing large enough for a child to go through; and the plaintiff claimed that on April 1, 1898, while on this walk which ran along the part of the building owned by the defendant, he fell through this opening to the ground and was injured, for which he asks damages.

The defendant in its answer admits that it is the owner, by lease, of that part of the building where the plaintiff below fell; denies that the tenants in the Libby part of the building where the plaintiff lived and other children were permitted by the defendant to come upon his premises and use that part of the walk or platform, but claims that the defendant, the plaintiff in error, had constructed a partition or gate between the two parts of the building or block, for the purpose of keeping the tenants who lived in the other part off plaintiff in error's premises, and denied that it owed any duty to the plaintiff to exercise any care in taking care of this walk or railing at the place where the plaintiff was injured.

These, in substance, were the issues of fact between the parties. The case was tried in the court of common pleas to a jury and a verdict was returned in favor of the plaintiff for $500.. A motion for a new trial was filed, upon the ground that the verdict was against the weight of the evidence and contrary to law, and for certain alleged errors occurring at the trial. This motion was overruled and judgment entered by the court of common pleas. To reverse that judgment error is prosecuted here.

The only error complained of here, is that the court erred in overruling the motion for a new trial, for the reason that the verdict is not sustained by sufficient evidence, and is contrary to the weight of the evidence, and is contrary to law.

There were no exceptions by the defendant below to the charge of the court. In considering the question, however, whether the verdict is contrary to law, it is necessary to consider the way in which the case was submitted to the jury by the court of common pleas. Judge Pugsley charged the jury that the defendant was not liable to the plaintiff unless they found, first, that the defendant below was in possession of or had control over the walk in question, and said to the jury: that if the defendant did not retain possession or control of this passage way, then it owed no duty to the plaintiff; and instructed the jury that that was the first question for them to consider, and if they found that it did not have possession of this walk or control over it, they need go no further, for the defendant would then be entitled to a verdict. The court further instructed the jury that if they found that the defendant did retain possession and control of the passage way, that they would inquire whether the defendant knowingly permitted the occupants of the adjoining building to use such passage way in passing to and from their apartments; and also whether the defendant knew that there were young children in the families of such adjoining occupants. And the court said to the jury: "If the passage way was freely and habitually used by the occupants of the adjoining building in passing to and from their apartments, and this was known to the defendant and acquiesced in by the defendant, then it was the duty of the defendant to use ordi-

Investment Co. v. Putney.

nary care to keep said passage way in a safe condition for use by the children of such adjoining tenants, if it knew or had reason to expect that such children would pass along this passage way or use it for any purpose. But if, on the other hand, the defendant, in good faith, through its agent, endeavored to keep such passage way closed against the occupants of the adjoining building, and if by the erection and maintenance of a suitable gate or otherwise it gave notice to said adjoining occupants that they would not be permitted to use such passage way, then it would not be regarded as acquiescing in the use of such passage way by the adjoining occupants and it would not be liable for injuries sustained in such passage way by the occupants of the adjoining building, although at times the gate, through the acts of other parties, was unfastened and opened, and thereby the adjoining occupants were enabled to and did pass upon such passage way.''

The court further said to the jury: "In short, to put it in another form, the defendant owed no duty to the plaintiff to protect him against injury while upon the defendant's passage way unless the plaintiff was invited by the defendant to go there upon this passage way, either expressly or impliedly. Now what do you find from the evidence in the case? Was there an express invitation on the part of the defendant to the plaintiff, the boy, to come upon that passage way, or was there an implied invitation? It is not claimed that there was an express invitation, so that the only question in that connection that you will have to deal with is, was there an implied invitation? To warrant you in finding that there was an implied invitation, it must be shown by a preponderance of the evidence that without any objection or hindrance the defendant knowingly permitted the adjoining occupants, including the children of their families, to habitually use such passage way in going to and from their apartments." The court instructed the jury upon the subject of negligence and the rules that should guide them in case they found that defendant owed a duty to the plaintiff; that if they found these facts to be true, that the defendant was then bound to use ordinary care towards the plaintiff in taking care of this passage way, and submitted the question to the jury, if they found those facts to be true, whether or not the defendant did use ordinary care.

From the reading of this charge we learn what facts the jury must have found in order to return a verdict in favor of the plaintiff. Upon an examination of the authorities, we are of the opinion that the instructions of the court to the jury were correct;—under all the circumstances of the case.

As has been stated, this block was occupied by eleven families at the time of the accident: six of them lived on the side owned by the investment company. These families occupied apartments which opened at the rear upon this gallery. Each one had a sort of a porch or individual entry way which came out to the passage way, or walk, which porch was under control of each family, but it is clear from the evidence that they used the walk in common; they reached their own doors by passing over this walk; and goods of all kinds were delivered at their houses by passing over the walk. It is also clear, as it seems to us, from the evidence, that the landlord retained possession of and control over this walk, and, so far as it was repaired the landlord, through his agent, Mr. Balmer, repaired it. The tenants were prohibited from closing up the passage way or walk by barriers, gates or otherwise: it was, in short, owned and controlled by the landlord and in its posses-

sion, the tenants using it in common and being permitted to use it for the purposes stated. The question was submitted to the jury by the court under the evidence in the case whether it was under the possession or control of the landlord, and the jury were told if they did not find that to be the fact, there could be no recovery in the case.

The cases of Burdick v. Cheadle, 26 Ohio St., 393; and Shindlebeck v. Moon, 32 Ohio St., 264, have been cited by counsel for the plaintiff in error as applicable to this case. But, in those cases, the tenant himself had possession of and control over the property. They were not cases where the landlord had retained possession of the premises and where he exercised control over them as he saw fit, as the landlord had in this case, and the Supreme Court recognized the principle in those two cases that I have suggested: that where the landlord is in possession of the premises or of a portion of them, and exercised control over them, he is liable for negligence as the general owner of such property regardless of the lease; and the court say, in Burdick v. Cheadle, *supra*, on page 396, after discussing the maxim: *sic utere tuo ut alienum non leadas*:"

"This principle ordinarily applies only to persons in possession, and having control of the property, either as owners or tenants. But in case a landlord undertakes with his tenant to keep the premises in repair, having thus reserved the control to the extent necessary for making repairs, his duty to the public in relation to the property is not affected by the lease, and he remains responsible, under the doctrine of the above maxim, for defects arising from the want of repairs during the continuance of the lease."

And on page 397 the court say:

"The general rule of law undoubtedly is, that persons who claim damages on the account that they were invited into a dangerous place, in which they received injuries, must seek their remedy against the person who invited them. There is nothing in the relation of landlord and tenant which changes this rule."

And in Shindlebeck v. Moon, *supra*, the first paragraph of the syllabus is as follows:

"A landlord who has demised property, parting with possession and control thereof to a tenant in occupation, is not responsible for injuries arising from defective condition of such premises, when that defect arises during the continuance of the lease."

And on page 267, the court say:

"The principle which runs through cases, determining the responsibility of the one or the other, may be thus defined: Whoever had control of the premises at the time the cause of injury originated, that person is liable in damages, which simply means that the party in fault must respond."

And on page 275 the court say:—after discussing the case of Burdick v. Cheadle, *supra*, and other cases:

"The rule, therefore, deducible from the authorities, and which is applicable to the case in hand, is this: A landlord who is out of possession of the premises by virtue of a demise, and who has no control over them; who would not have the right to enter therein, even to make repairs, without his tenant's consent, is not liable for accidents occasioned by the fact that the property is temporarily out of repair."

So that under these two well known Ohio cases, the court was fully justified in saying to the jury that if they found that the defendant

was in possession of this property and exercising control over it, that then defendant might be held liable for negligence in the use of the property, and in not keeping it in repair, although the premises abutting upon this walk were leased to various persons and although this walk was used in common by the tenants for their convenience, the possession and control of it being reserved in the landlord.

In 129 Mass., 25, at page 33 the court say:

"There is no implied warranty in the letting of a house that it is safe and fit for habitation. A lease does not imply any particular state of the property let, or that it shall continue fit for the purposes for which it is let; unless otherwise stipulated, the tenant takes the premises as they are, and must pay the rent for the term. But this rule applies only to premises which, by the terms of the lease, have passed out of the control of the landlord into the exclusive possession of the tenant. Where a portion of a building is let, and the tenant has rights of passage way over staircases and entries in common with the landlord and the other tenants, there is no such leasing as will exonerate the landlord from all responsibility for the safe condition of that portion of which he still retains control, and which he is bound to keep in repair; as to such portion he still retains the responsibilities of a general owner to all persons, including the tenants of his building."

The Superior Court of Cincinnati, in Dorse v. Fisher, 10 Dec. Re., 163, in the first paragraph of the syllabus, say:

"A landlord is charged with the duty of keeping in repair, and free from danger, a common passage way for a number of his tenants, where he has control of the passage way, subject only to the tenants' right to use the same as a passage way."

And the general rule is stated and authorities cited in Shearman & Redfield on Negligence, vol. ii, sec. 710, where the author, among other things, says:

"And so where a building is let in flats for offices or for habitation — the halls, entries, stair-ways, roof and yard not being demised to any tenant but used in common by all—the landlord owes a duty to the tenants, and to those entering the premises to visit them, to keep such undemised parts in a reasonably safe state of repair."

So that it seems to us in this case, if the jury found the landlord to be in possession of and exercising control over this walk, that then the landlord would be liable, notwithstanding the lease and the privileges of the tenants to use the walk, as the general owner of the property and bound to use the same degree of care as any owner of property, considering all the circumstances surrounding the case.

The plaintiff at the time of this injury was a child a little more than two years of age—two years and two or three months. The court charged the jury that the defendant would not be liable unless it invited the plaintiff, either by express or implied invitation, to come upon these premises; that if the plaintiff in error, defendant below, undertook to erect and maintain a partition between the two parts of this building, for the purpose of keeping those who lived in the other part off his premises, that the investment company would not be liable, although the gate was sometimes opened and children got upon this walk, and the plaintiff was in that way injured. The case of Railroad Co. v. Harriman, 45 Ohio St., 11, contains a very full discussion of the responsibilities and liabilities of a property owner towards persons who are permitted to use it as a highway or come upon it, and especially of the

duty towards children who are permitted to go upon premises, or by implied invitation are invited to use them as a play-ground. The authorities in that case are gathered together from many states. The court at page 25, quotes with approval from Bransom v. Labrot, 81 Ky., 638, as follows:

"As a general rule, the owner of land may retain to himself the sole and exclusive use and occupation of it. But its individual use and enjoyment are subject to conditions and restrictions imposed for the public good, and from a reasonable and humane regard for the welfare and rights of others. Hence a party may be made liable for the negligent use of his property whereby the person or property of another has been injured. It is held that a party is guilty of negligence in leaving anything in a public place where he knows it to be probable that some other person will unjustifiably set it in motion to the injury of a third person."

"It is a reasonable and necessary rule, that a higher degree of care should be exercised towards a child incapable of using discretion commensurate with the perils of his situation, than one of mature age and capacity. Hence, conduct which towards the general public might be up to the standard of due care, may be gross or wilful negligence when considered in reference to children of tender age and immature experience. While, therefore, the owner of lands is not bound to provide against remote or improbable injuries to children trespassing thereon, there is a class of cases which hold owners liable for injuries to children, although trespassing at the time, when from the peculiar nature and open and exposed condition of the dangerous defect, or agent, the owner should reasonably anticipate such injury to flow therefrom, as actually happened. In such case the question of negligence is for the jury."

And the court, at page 27, quotes with approval from the opinion of Judge Cooley, as reported in 53 Mich., 507, as follows:

"The moving about of the children upon the land where they were at liberty to go, while they were not actually employed, was as much an incident to their being there, as is the loitering or playing of children outside the travelled part of the highway, as they go upon it to school or upon errands. Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution toward them, must calculate upon this, and take precautions accordingly."

And on the question of an invitation to children, the court say, on page 28:

"It will be found by an examination of the cases in which consideration is given to this subject, that there is in reality no invitation; and it is implied from slight circumstances, generally from the fact that children, following their inclinations, go upon and into exposed and frequented objects and places."

On this same subject of the duty of the owner of property toward children, see 21 Minn., 207, pages 210 and 211; and Shearman & Redfield on Negligence, sec. 705, where the author says that children are not to be put upon the same ground as trespassers, idlers and mere licensees. "The owner of land, where children are allowed or accustomed to play, particularly if it is unfenced, must use ordinary care to keep it in a safe condition, for they being without judgment and likely to be drawn by childish curiosity into places of danger, are not to be classed with trespassers, idlers and mere licensees." See also 152 U. S., 262.

It appears, from these authorities, including Railroad Co v. Harriman, *supra*, that it was the duty of the investment company, if these children including plaintiff were in the habit of playing upon this walk, and if that was known to the investment company, it was its duty to use such care towards them as the nature of the case required; it was its duty to consider the nature of the children who were or might be playing upon that walk; their lack of judgment and discretion; to consider the character and the nature of the walk itself; that it was fourteen feet from the ground; that, with a railing defective as this was, it would be and was a dangerous place for children to play.

All these questions were submitted to the jury.   The jury having found that the defendant was in possession of this property, and having found that the children of this entire block were in the habit of playing along there and frequenting there and that this was known to defendant, the question as to whether or not the defendant was guilty of negligence was submitted by the court to the jury, and they found under all the evidence, that the defendant was guilty of negligence toward the plaintiff.   The plaintiff was too young to be guilty of contributory negligence and the doctrine of imputed negligence is not recognized in Ohio.

There is some conflict in the evidence in the case, and it is contended that the verdict is against the weight of the evidence and for that reason should be set aside upon the charge of the court below; that the jury were not warranted under the evidence in finding the facts required to be found under that charge and that therefore the judgment should be reverse.   The defendant claimed that it had no knowledge that the children from the other part of the block were in the habit of frequenting this walk, and testimony was offered both by the plaintiff and defendant below upon that question.   The plaintiff's father was called as a witness; he said he had lived there about a year before the accident, and that the platform was used by everybody, by the children of the people who lived in the flats, by the milk dealers, the grocerymen and the friends of the tenants of the whole block and that the children ran the whole length of the block.   He says: ''My children used to run there whenever they got a chance, simply because they liked their aunt, and they liked to go over, because they generally got a little piece of candy or a piece of cake.   And of course we had to go over after them. They were continually on the run.   I used to go over there and try to keep them from going over all I could, but, as children will, they run.''

And there are several witnesses who testify that the children in this block were in the habit of using this walk going back and forth at will. There was only one other child in the block as young as this one or about the age of this one, but there were several of school age, from six years up to seven or eight.   There was contention between the parties as to whether this gate was kept closed or intended to be kept closed by the defendant, and the court duly charged the jury that if they found that the defendant below had put up this gate and was undertaking in good faith to keep it closed for the purpose of keeping the tenants who lived in the other part of the block off these premises, then the defendant would not be liable.   The father of the boy testified that when he first went there there was an iron gate up there.   He says "It was fastened by a piece of what I would call electric wire.   There was a piece of wire wound around, and that piece of wire was up a week, perhaps less, after we moved there, and I don't know of it being there after that, only when I went and wound it myself or tried to put the wire on that

gate. I tried to stop it, and keep the children from running backwards· and forwards. He made us too much run. We had to chase after him· every day, and he would run away and we would go after him and fetch him home.'' There are several witnesses who testified that this gate was· open a large part of the time, and the drift of the testimony seems to be that the tenants themselves took charge of the gate and kept it closed to· some extent. The agent of the defendant, Mr. Balmer, testified in regard to the gate, that it was open when he took charge of the prop-erty, and he says: ''I had no objections if my tenants didn't object, and when my tenants objected to people running back and forth, of course I took means to stop it.'' He says it was open two months after he took charge, and he was asked:

''Q. Your tenants made no objection until two months? A. Yes,. sir; they did. Thy all got so strong I took action.

Q. The action you took was to have the gate nailed up? A. Yes, sir.

Q. How long did it stay nailed up? A. Sometimes it would stay over night.

Q. How long did it remain nailed up? A. I don't remember.

Q. What is your best impression? A. I haven't the least idea.''

And he says, among other things, in regard to the children, that he· didn't know how many children there were in the block and that he didn't know that these children were in the habit of playing there.

Now this question as to the gate and as to the children playing upon this walk, whether the defendant permitted them to play there or had knowledge of it, whether the defendant undertook to keep this gate· up and to keep them off these premises, was all submitted to the ¦jury under. the evidence that was offered and under the charge of the court, to which no exception was taken, and which is clearly sustained by the· authorities, and the jury found in favor of the plaintiff.

·As to this question of the weight of the evidence, it does not come before us as if we were sitting here as the triers of the facts; the case has been submitted to a jury, under a proper charge. A motion for a new trial was argued before an able and a learned judge and a new trial asked upon the ground that the verdict was against the weight of the evidence and was not sustained by sufficient evidence, and the judge, having heard the testimony and having, seen the witness, overruled this· motion. And in considering the question here we are governed by the principles laid down by the Supreme Court in the days when the Su-preme Court considered cases upon the weight of the evidence, and although we are all familiar with these principles, it is not out of place to occasionally refer to them to refresh our recollection as to the duty of a reviewing court upon such a question. The Supreme Court of this· state in French v. Millard, 2 Ohio St., 45, at pages 53 and 54, through Judge Thurman, say:

''A mere difference of opinion between the court and the jury does not warrant the former in setting aside the finding of the latter. That would be, in effect, to abolish the institution of juries, and substitute the court to try all questions of fact. It must be clear that the jury has erred, before a new trial will be granted on the ground that the verdict is against the weight of evidence.''

And again, in McGatrick v. Watson, 4 Ohio St., 567, the same judge, after quoting what I have just read, added this:

"Now if this is the rule, as it undoubtedly is, even in the court where a cause is tried, and before whom the witnesses appeared and testified, *a fortiori* ought to be the rule, when another court decides the motion for a new trial, with no other knowledge of the facts than is derived through the imperfect medium of a written statement."

And the rule is again laid down in Breese v. State, 12 Ohio St., 146, 156, where the court say:

"The jury who try a cause and the court before which it is tried, have much better opportunities to determine the credibility and effect of the testimony, and we ought, therefore, to hesitate before disturbing a verdict, rendered by a jury and confirmed by a court, possessing such advantages, merely because there is an apparent conflict in the testimony."

This rule was deemed of so much importance that the Supreme Court again laid it down, after citing these authorities, Dean v. King 22 Ohio St., 118, where they go so far as to say that it must appear that there was bias or prejudice. They say, on page 134:

"And if the motion be overruled, a reviewing court should not reverse, unless the verdict (or finding of fact if the jury be waived) is so clearly unsupported by the weight of the evidence as to indicate some misapprehension, or mistake, or bias on the part of the jury, or a wilful disregard of duty."

A majority of the court are unable to say upon this record and with this conflict of testimony, that the jury were not warranted in finding the facts required to be found by the charge of the lower court to fix liability upon the plaintiff in error. The jury were required to find these facts as put to them by the trial court, and before they could return a verdict in favor of the plaintiff they must also have found that the defendant was guilty of negligence toward the plaintiff. In our judgment this finding ought not to be disturbed by this court. We are not prepared to say that if the jury found that these premises were in possession of the landlord and under his control, this walk, fourteen feet from the ground with eleven families living on this floor of the block; if the jury found that this gate was left open and that it was not intended to keep them on the other side of the walk, but they were permitted to use it at will, and by implied invitation invited to do so that the jury were not warranted in finding that the defendant, under this testimony, either knew or ought to have known that plaintiff and other young children of various ages would be going up and down this walk and playing there. We do not think that it was absolutely necessary that the defendant should have had actual knowledge that this little boy was going up and down upon this walk, but, with eleven families living in the block, it would be presumed that there would be some children to avail themselves of the walk, passage ways and galleries erected around about the building. But plaintiff's father testified the boy had been running back and forth for a year, and if the jury found that the defendant was in possession of the property and found it invited the plaintiff along with other children to go upon the property, then whether having these two pickets out was negligence or not was a question for the jury. According to the testimony in the case these pickets had been out for something over a year. The evidence shows that this little boy came along there, that he was taken there by a woman who lived in the Libby part of the block, and she went into the apartment at this point to visit a relative of the plaintiff's father. She left the little boy out on

the walk and his attention was attracted by another boy who was play-ing on a trapeze and he backed towards this railing and kept backing until he backed through this hole in the railing and went off backward and broke his leg.  Now, if children were invited upon this place con-sidering, the height that it was from the ground, the dangerous place that it would be for children to play or to be, with these pickets out, whether the evidence showed negligence or ordinary care in the use of this property on the part of the defendant, was a question peculiarly for the jury.  As the Supreme Court has said in several cases, where the minds of reasonable men would differ upon a state of facts as to whether negligence was shown or not, the case must be submitted to a jury, negligence in itself not being a fact but being an inference from facts, and where reasonable men might differ, it is for the jury to say whether there is negligence or not.  Upon this proposition I cite Marietta and Cin. R. R. Co. v. Picksley, 24 Ohio St., 668; Railway Co. v. Murphy, 50 Ohio St., 142 and the 22 C. C. of App., 520, where the court say in the syllabus:

"When it is said that a given act does or does not constitute negli-gence in law, the statement means no more than that, in the judgment of all reasonable men,—not judges alone, for it concerns a fact and not a question of law,—it would be esteemed such.  When it can be affirmed that all reasonable men would agree as to the quality of an act, in respect of its being either negligent or prudent, the court may give effect to such consensus of opinion, and direct a verdict in accordance therewith; but this direction is able to say that it is also the opinion that all reasonable men would entertain of the question.  If there is doubt as to whether all reasonable men would draw the same conclusion from the evidence, then the question must be submitted to the twelve reasonable men appointed by the constitution to determine disputed questions of fact."

Also Shearman & Redfield on Negligence, sec. 54, and a decision of the Supreme Court of the United States, 84 U. S., (17 Wall.) 657, where the Supreme Court say: "Certain facts we may sup-pose to be clearly established from which one sensible and impartial man would infer that proper care had not been used, and that negligence existed; another man equally sensible and equally impartial would infer that proper care had been used, and that there was no negligence.  It is this class of cases and those akin to it that the law commits to the decision of a jury.  Twelve men of the average of the community, comprising men of education and men of little education, men of learn-ing and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer; these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion.  This average judgment thus given it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one man, that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge.

"In no class of cases can this practical experience be more wisely applied than in the case that we are considering.  We find accordingly, although not uniform or harmonious, that the authorities justify us in holding in the case before us, that although the facts are undisputed it is for the jury and not for the judge to determine whether proper care was given, or whether they establish negligence."

Investment Co. v. Putney.

A majority of us think that under all the facts and circumstances shown here, the condition of this property, the number of people who were living there, the evidence that children were allowed to run and play upon this platform, the fact that it was fourteen feet from the ground and all the other circumstances, that this is a case in regard to which reasonable men might differ: one man might think that the defendant had used ordinary care and another one, equally sensible and equally impartial, might be of the opinion that the defendant was guilty of negligence. The jury have found the defendant guilty of negligence, and under the authorities as we understand them and the evidence as disclosed by the record, we do not feel warranted in disturbing the verdict. The judgment of the court of common pleas will therefore be affirmed, but with penalty.

PARKER, J., dissenting:

My conviction that this judgment is not sustained by sufficient evidence is so clear and firm, that, notwithstanding the high estimation in which I hold the opinion of my associates and the learned judge before whom this case was tried, and the consideration I am bound by rules of law and am disposed by my high estimate of their value to yield to the views and conclusions of juries as reflected in their verdicts, I deem it my duty to respectfully express my dissent from the conclusions of a majority of this court.

In the main I agree with my associates as to the rules of law governing cases of this character, and as to their application to the case at bar; but upon one vital question I differ from them, and I will briefly state the point of difference and the grounds of my opinion. I believe that the only theory upon which the plaintiff had a right to recover, if the necessary facts had been established for its support, was that involved in the charge of the trial judge in submitting this case to the jury, viz: that the plaintiff had been invited by the defendant to go upon this walk where he was hurt; and, as there was no evidence of an express invitation, the court properly submitted to the jury the single question whether there was an implied invitation. The verdict of the jury necessarily involves an affirmative answer to this question. I am of the opinion that the verdict, in this respect, is not sustained by sufficient evidence and that the motion for a new trial containing that ground should have been granted, and, consequently, that this judgment should be reversed on the ground that the court erred in overruling said motion.

As stated by my associate in announcing the opinion of a majority of this court, beside the plaintiff there was but one child under the school age in these eleven suites of apartments. The family of which plaintiff was a member lived in apartments in a block adjoining that owned by defendant, and in which defendant had no interest and over which it had no control. True, the walk had been constructed continuously along both blocks and so as to be convenient of access and for use by the tenants of both blocks for the whole length thereof, and it was so used except as there were occasional and temporary interruptions by the placing of the gate across the walk at the point where the blocks joined one upon the other.

Now it should be borne in mind that this structure was designed and was appropriate for a walk; and that, being fourteen feet above the ground and having four open stairways, it was not safe or suitable for

a play-ground or nursery for children as young as the plaintiff. Without material alteration, including gates at the' stairways, and constant guarding thereof to keep the same closed, this walk could not have been made a safe or suitable resort for such small children when unattended.

It can hardly be claimed that it was the duty of defendant to so alter and guard his part of the walk as to make it safe for the plaintiff, a member of a family in another block, to go there unattended, unless defendant knew or ought to have known that plaintiff or other small children were then resorting to and using this part of the walk. That defendant had such knowledge there is absolutely no evidence. It is not shown that defendant had any knowledge of the presence of this or any other child under school age in either block, much less that they were permitted to go upon this walk unattended and assuming that defendant was bound to know that small children were in the blocks, it seems to me that defendant should not be held bound to know that such small children would or might be so grossly neglected by those upon whom their safe custody devolved, as to be permitted to go to this place, which, independently of missing pickets, and because of the open stairways, would be very dangerous to them; and that a duty to make this walk safe as a nursery ought not to be imposed upon the defendant in the absence of actual knowledge that it was being thus used. Indeed the evidence that plaintiff, or this other small child was ever permitted to go upon this walk unattended is very meagre. It should be borne in mind that for the uses for which it was designed by the owners and to which it was devoted by adults and school children, i. e., a walk, this structure was perfectly safe. The fact that children old enough to take care of themselves in a place of this kind were known to go there to walk, to run or to play, affords no just ground for an implication of an invitation to very young children to use the walk in the same way. If it would, then where can we stop or draw the line? Why would it not follow that the defendant must guard against possible accidents to babes old enough to creep upon this walk, on the ground that he is bound to assume that they will be permitted to creep at will upon this elevated walk with open stair-ways?

Belonging to the suite of rooms rented to and occupied by the father of plaintiff and his family in this adjoining block, there was an open porch contiguous thereto and to the part of the walk passing the same, to which plaintiff's family had an exclusive right, and that plaintiff's father or his landlord might have fitted with fence and gates so as to make a safe place out of doors for this child. The same was true of each suite. Had not defendant a right to assume that extremely young children would be cared for at home, in the absence of positive notice to the contrary?

There being, as I read the record, no evidence that plaintiff in error had knowledge that children of or near the age of plaintiff were accustomed to go upon this walk unattended by adults, and no evidence that this was a place alluring or enticing to such children, so that their going there should be anticipated because of its natural attractiveness, and no evidence of an invitation express or implied, to plaintiff or his parents or custodians authorizing the going of plaintiff to this place, I am fully persuaded that the judgment and verdict should not stand.

*Marshall & Fraser* and *Waite & Snider*, for plaintiff in error.

*T. J. McDonnell*, for defendant in error.