[Civ. No. 17297. First Dist., Div. Two. Sept. 10, 1957.]

DOMINIC YAZZOLINO, a Minor, etc., et al., Respondents, v. C. JONES, Appellant.

628

Sullivan, Roche, Johnson & Farraher for Appellant.

Andrew Bodisco and Ollie M. Marie-Victoire for Respondents.

KAUFMAN, P. J.—This appeal is taken by defendant, Mary C. Jones from an order denying her motion for a judgment notwithstanding the verdict and a judgment on a jury verdict in favor of the plaintiff, Dominic Yazzolino, a minor, and his father. The complaint sought to recover damages and medical expenses for personal injuries sustained in the plaintiff's fall from the exterior rear stairway of a two story two flat structure owned by the defendant in the city of San Francisco.

As there is conflicting evidence on several matters, a detailed statement of facts is necessary. The accident occurred on the afternoon of Sunday, May 24, 1953, when the plaintiff was

9 years old. The defendant had rented the lower flat of the property in question to Mr. and Mrs. Duffy and their son, Ronald, who was also 9 years old at the time of the accident. The plaintiff lived around the corner from the Duffys and played with Ronald Duffy every day. On the afternoon in question, Ronald Duffy was standing on the landing of the exterior rear stairway checking the sights on his air rifle.

Ronald's parents testified that they did not know where he was on the afternoon of the accident. Ronald testified that he had told his parents he was going out on the back stairs. According to the testimony of the plaintiff and the plaintiff's younger brother, they were sitting on their back porch when Ronald yelled to them to come over to help him check the sights on the air rifle. According to the testimony of Ronald, the plaintiff "asked me if he could come over." The plaintiff then got permission from his mother to go out, but didn't tell her where he was going. The plaintiff and his brother, Mike, who was 7 years old at the time of the accident, then joined Ronald on the stairway. There was no evidence that the boys had played on the stairway before, or that they had permission from the upstairs tenant to play on the stairway, or that the upstairs tenant or anyone had seen them playing on the stairway prior to the date of the accident. Ronald had been expressly forbidden to play on the rear stairway, and did not customarily play there "as there was no one to play with," although he did on occasion run up and down the stairway. The plaintiff had never been told by anyone not to play on the particular stairway where the accident occurred. His parents did not know where he was at the time of the accident and had not given him permission to play on the stairway. The stairway in question is a wooden exterior stairway, the lower portion of which is outside the back door to the Duffy flat. There is a gate in the center, separating the lower from the upper portion of the stairway. The upper portion led only to the back door of the flat of the upstairs tenant who had never used the stairway. The Duffys used the stairway once every six or seven months to visit the upstairs tenant. The railing consists of three rails about 8-10 inches apart, parallel to the stairs. The distance from the top rail to the step is 35 inches. At the time of the trial, the plaintiff was 5 feet tall. There were no records available as to his height at the time of the accident, but he and his mother testified that he had grown about 6 inches in the intervening three years.

The plaintiff, Ronald Duffy and Mike Yazzolino all testified that just before the accident the plaintiff was crouching on a step in the upper portion of the stairway, and leaning on the center rail and pointing the rifle toward a tree. The center rail gave way and the plaintiff fell 12-14 feet to the ground and sustained the injuries which are the subject of this action. The evidence is in conflict as to whether at the time of the accident the bottom rail was missing at the particular spot where the accident occurred. The policeman, who subsequently reported the accident, testified that the plaintiff had told him at the hospital that he had been sitting on top of the railing prior to the accident. Ronald did not see the plaintiff fall as he was talking to Mike about three steps away from the plaintiff. Mike testified that he saw the plaintiff fall and the railing break. The plaintiff testified that he did not see or feel a loose rail before he fell. Ronald did not see the rail give way or a board falling with the plaintiff. The plaintiff's father testified that one of the boards which was found on the ground with the plaintiff after the fall was a board which belonged to the railing of the upper stairway.

The evidence produced at the trial disclosed that the Duffys had rented the premises since 1945 on an oral lease from the defendant. The defendant testified that she had an oral understanding with both the Duffys and the upstairs tenant that, if any repairs were necessary on the premises, the tenants were to make repairs or arrange to have anything they could not do themselves done by someone else and then notify the defendant. On a number of occasions, repairs had been made in this manner and the rent reduced accordingly. Mr. Duffy testified that he had repaired the back stairway from time to time, and Mrs. Duffy corroborated this testimony. The upstairs tenant had also had the back stairway repaired by her son-in-law. Rent was paid by the tenants to a local druggist, a good friend of the defendant who out of friendship banked the rent moneys or forwarded them to the defendant.

The defendant acquired the property in 1934 and had been on the property only three or four times since then as she was out of town most of the time with her husband. She kept no keys to the premises when they were rented. The premises had not been inspected by any official since they were built. The defendant testified that she had been on the stairway in question not more than once or twice in 20 years, that no one had ever notified her that the stairs were

defective, and that it did not occur to her that the stairs needed repairs; "I had Mr. Jones to look out for those things for me." The last time before the accident the defendant had been on the stairway was in December 1952, when she rented the upstairs flat.

The defendant's husband, Mr. Jones, testified that he had been in San Francisco on 10 to 12 occasions in the last five years at the most and that he never went out to the premises unless called as "the tenants always took care of everything." He further testified that he had been on the property in question about 15 times in the last five years, although he was certain about having been there only six times when the tenants changed, and that he had gone up and down the stairway in question on each visit. He had gone up the stairs to inspect the roof just before the upstairs flat was rented in December, 1952; that the "stairs have always been in condition; in good condition, as any stairs in San Francisco of that type of house." He also testified as follows: ". . . and sometimes we have renovated the premises. We always kept the thing in pretty good shape, much above average."

Mr. and Mrs. Duffy testified that on the occasion before the accident when Mr. Jones was on the premises, they had complained to him about their sink and the back stairway and he had promised to see about them. Mr. Jones denied that the stairway had been mentioned to him on that or any other occasion. Mr. Duffy testified that Mrs. Duffy had written a letter to the Jones about repairing the stairs before the accident, but Mrs. Duffy denied writing such a letter. The letter in question was subsequently admitted at the trial and contained no mention of the stairs.

The defendant's contentions on appeal are that as a matter of law she is not liable as she did not retain control over the premises which were not a common areaway; that the plaintiff has not proved the negligence of the defendant as the plaintiff has not shown that the defendant had any duty toward the plaintiff or established any defect in the premises or any causal connection between a defect and the injury; that even if the plaintiff had established a prima facie case of negligence, she would not be liable because of the plaintiff's contributory negligence, as well as various alleged errors of the trial court in its rulings on the admissibility of evidence and in its instructions to the jury.

As to the primary issue of the defendant's retention of control over the exterior stairway on which the accident

occurred, the general rule in this state is that " 'In the absence of fraud, concealment or covenant in the lease, a landlord is not liable to a tenant for injuries due to a defective condition or faulty construction of the demised premises.' " (*Epperson* v. *Mendes*, 141 Cal.App.2d 581, 584 [297 P.2d 141]; *Ellis* v. *McNeese*, 109 Cal.App. 667 [293 P. 854].) However, the general rule is subject to the well recognized exception that the landlord has a duty to use ordinary care to keep in a safe condition portions of the premises over which he retains control such as common areaways; if the landlord is negligent in this regard, he is liable to a tenant for any resulting injury. (*Hassell* v. *Denning*, 84 Cal.App. 479 [258 P. 426]; *Brown* v. *Pepperdine*, 53 Cal.App. 334 [200 P. 36].)

In *Freeman* v. *Mazzera*, 150 Cal.App.2d 61, this court said at page 63 [309 P.2d 510]: "The stairway was a common one reserved by the owners-lessors and under their control. They thus owed the tenants and other invitees a duty to use ordinary care to keep this area in a safe condition."

As stated in *Johnston* v. *De La Guerra Properties, Inc.*, 28 Cal.2d 394 at 399 [170 P.2d 5]; "One who leases a part of the premises, retaining control of other portions such as common walks or passages which the tenant is entitled to use, is subject to liability to persons lawfully on the land with the consent of the tenant for damages caused by a dangerous condition existing on the part under the owner's control, if by reasonable care he could have discovered the condition and made it safe." As stated in *Blumberg* v. *M. & T. Incorporated*, 34 Cal.2d 226 at 229 [209 P.2d 1]: "The duty was not limited to conditions actually known by the owner to be dangerous, but extended also to conditions which might have been found dangerous by the exercise of reasonable care." Defendant contends that there is not substantial evidence to support the finding that she retained control of the stairway. She seeks to bring herself within the rule of such cases as *Ellis* v. *McNeese, supra*, 109 Cal.App. 667, where there was no evidence that other tenants used the stairway in question or that it was designed or intended to be used by tenants of other apartments and where each of the apartments on the second and third floors had an independent outside stairway. The same was true in *Sherrard* v. *Lidyoff*, 108 Cal. App.2d 325 [239 P.2d 28], also relied upon by the defendant. Plaintiff in his brief argues that the issue of control is a question of fact which was properly left to the jury. However, the record indicates that the trial court did not so instruct

the jury, as the only instructions given on this issue were the following:

"It is the duty of a landlord, such as the defendant in this case, to exercise reasonable care in making safe, and in maintenance and repair of any part of the building or other property over which he retains control, and which is reserved from the exclusive use of any tenants, so that they may be used in common by all tenants and all others who may lawfully enter the premises."

"Whenever a person is a guest or invitee of a tenant, and as such enters upon a part of the premises so reserved for common use, and which is under the landlord's control, he is assumed by law to be an invitee of the landlord."

We do not think that the matter of the defendant's control was an issue of fact in this case. The stairway led from the ground to the back door of the lower flat and to the back door of the upper flat. There was no independent stairway for each floor of the building. As the plaintiff correctly points out in his brief, actual use is not the determinative factor. (*Hassell* v. *Denning, supra,* 84 Cal.App. 479.) It is, therefore, of no significance that the upstairs tenant did not use the stairway or that the Duffys had used the stairway only once in six months. If the upstairs tenant had wanted to use the stairway to get to the back door of her flat, she would have had to use the lower portion of the stairway. There is no question therefore that the lower portion of the stairway was a common areaway. It would be ridiculous to say that, although the lower portion of the stairway was a common areaway, the upper portion was not because it led only to the flat of the upstairs tenant, as the defendant argues.

The defendant's next argument is that, even if the stairway was a common areaway under her control, she is not liable because of the agreement between her and the tenants that they make any necessary repairs. There was conflicting evidence as to the precise scope of the oral agreement; while the tenants admitted that they had made occasional repairs, the defendant's husband testified that they had "always kept the thing in pretty good shape." Even if the alleged agreement is viewed most favorably to the defendant's position, it does not exhibit complete relinquishment of control by the defendant as the tenants were to either make the repairs and notify her or notify her to have them made. Even had the agreement on the leases exhibited a complete relin-

quishment of the defendant's control, an owner of property who is deemed to have legal control cannot so delegate his duty to keep common areaways free of defects. (*Brown* v. *George Pepperdine Foundation*, 23 Cal.2d 256 [143 P.2d 929].) As said in *Rodenberger* v. *Frederickson*, 111 Cal. App.2d 139 at 141 [244 P.2d 107] : "The right to make common use of the stairways and landings by different tenants . . . cast upon the defendant [the landlord] the duty to maintain these areas in a reasonably safe condition. [Citing cases.] Merely letting deteriorated premises remain without any effort on the part of the landlord to ascertain their true condition is not enough to discharge this duty." (*Spore* v. *Washington*, 96 Cal.App. 345 [274 P. 407].)

■ The defendant is not to be charged with the responsibility for a defect unless she has actual knowledge of it or unless the defect had existed for so long a time that in the exercise of ordinary care she would have learned of it. (*Harris* v. *Joffe*, 28 Cal.2d 418 [170 P.2d 454].) On the issue of defendant's notice, the conflicting evidence was resolved in favor of the plaintiff by the jury. We cannot disturb this implied finding on appeal. As to the issue of whether the defect was one which she could have discovered in the exercise of ordinary care, there was substantial evidence to support the conclusion reached by the trial court, in view of infrequent visits to the property by the defendant or her husband and the testimony regarding the missing bottom rail which the jury may have believed. ■ It has been held that the duty of ordinary care in relation to common areaways includes not only keeping the premises safe, but also requires "reasonably careful inspection at reasonable intervals to learn of dangers not apparent to the eye." (*Devens* v. *Goldberg*, 33 Cal.2d 173 [199 P.2d 943].)

■ Defendant's next contention is that, even if she is charged with notice of a defect in premises over which she retained control, the plaintiff has not proven the existence of the defect. One of the witnesses testified that the boards of the railing were rotten. The only eyewitness to the accident, Mike, saw the plaintiff fall when he leaned against the railing. A board was found on the ground with the plaintiff after he fell. Repairs had been made of the stairs by the tenants. There was also evidence which indicated that the bottom rail was missing before the accident happened. From the above, it cannot be said that the jury was not justified in inferring the presence of a defect. In *Bock* v.

*Hamilton Square Baptist Church,* 219 Cal. 284 [26 P.2d 7], the court said that the defendant's negligence was the proximate cause of the accident where it could be properly inferred that the injured plaintiff leaned against the defective railing and that the railing gave way. The issue here was properly submitted to the jury. On the matter of proximate cause of the accident, defendant contends that plaintiff's version is an inherently impossible one. The evidence as to the height of the plaintiff, the height of the stairway, and the conflicting views as to the plaintiff's position just before the accident was presented to the jury. In *Miller* v. *Geeser* (1915), 193 Mo.App. 1 [180 S.W. 3], in a somewhat similar situation, it was held that the issue as to whether the child fell through an open space in the railing as contended by the plaintiff or climbed up on a chair and fell over the top of the railing as contended by the defendant, was properly submitted to the jury. ▮ Even though reasonable minds may differ on the existence of proximate cause, the conclusion reached by the trier of fact is controlling on appeal. (*Hartje* v. *Olcott,* 116 Cal.App. 712 [3 P.2d 340].)

▮ Defendant's next contention is that the plaintiff was making a misuse of the premises as the railing was not designed to be a weight bearer. The identical argument was made to the court in *Rodenberger* v. *Frederickson, supra,* 111 Cal.App.2d 139, and rejected as follows at 141-142: "The answer to this contention is that the wall was built to prevent people from stumbling and falling into it and that it failed to function in this respect through deterioration. If nothing more than a warning were intended, as appellant contends, a placard would have sufficed." This issue also was properly submitted to the jury, and cannot be here disturbed. (*Berniker* v. *Berniker,* 30 Cal.2d 439 [182 P.2d 557].)

Defendant next argues that she owed no duty toward the plaintiff, other than to refrain from wilfully or wantonly injuring him as he was a trespasser. Plaintiff, relying on *Spore* v. *Washington* (1925), *supra,* 96 Cal.App. 345, which involved an injury to a person delivering coal to the tenant, argues that he was clearly an "invitee" to whom the owner owes an affirmative duty to exercise reasonable care and maintain the premises in a safe condition so as not to injure such invitee (*Butcher* v. *Queen City Iron & Metal Co.,* 99 Cal.App. 2d 25 [221 P.2d 265] ; Prosser on Torts, 2d ed., p. 453; Harper and James, The Law of Torts, vol. 2, pp. 1478-1498) and with-

in the rule that he was an invitee of both the tenant and the owner. The instructions given to the jury on this issue were as follows:

"Whenever a person is a guest or invitee of a tenant, and as such enters upon a part of the premises so reserved for common use, and which is under the landlord's control, he is assumed by law to be an invitee of the landlord.

"The duty of the landlord, as I have stated it, applies in such invitee's favor as to those parts of the premises under the landlord's control, and upon or into which such invitee would be reasonably likely to go under the circumstances of the invitation, or would be induced, or allured to go by the express or implied invitation arising from those circumstances.

"If, however, the invitee enters any part of the premises, or makes any use thereof beyond the scope of the invitation, in so far as he oversteps the bounds of the invitation, and while he does so, the landlord holds no duty except to refrain from intentional harm or from wilfull or wanton injury; and except also that if the landlord should have actual knowledge of such person being in a dangerous situation, the landlord would have a duty to exercise ordinary care to avoid injuring the person."

The court rejected the defendant's requested instruction on the subject of the duties owed to a licensee. ▮ The purpose for which a person is on the premises of another is the test of whether he is an invitee or mere licensee. (*Free* v. *Furr*, 140 Cal.App.2d 378 [295 P.2d 134] ; *Popejoy* v. *Hannon*, 37 Cal.2d 159 [231 P.2d 484] ; Rest., Torts, §§ 330-332.) If the purpose is one of common interest or mutual advantage, the person is considered an invitee; if the purpose is one of mere pleasure or benefit like that of a social guest, the person is considered a licensee. (*Ashley* v. *Jones*, 126 Cal.App.2d 328 [271 P.2d 918] ; 65 C.J.S., p. 489.) ▮ The duty owed to a licensee is to exercise ordinary care in the case of active conduct with no liability for the defective condition of the premises except as to concealed traps. (*Oettinger* v. *Stewart*, 24 Cal.2d 133 [148 P.2d 19, 156 A.L.R. 1221] ; Rest., Torts, § 342.) We think in the instant case there was no error in the instructions given by the court as, while the plaintiff may have been a licensee as to the Duffys, he was an invitee as to the defendant. ▮ "A lessor or owner who retains control of stairways" has a business interest in the use of these facilities by any person whom his lessee may choose to admit,

irrespective of whether the visit of such a person is for his own or the lessee's business purpose or whether he comes as a mere social guest or other gratuitous licensee of the tenant." (Rest., Torts, § 332h.) A similar view was expressed by the court in *Spore* v. *Washington, supra,* 96 Cal.App. 345 at 355 and 356, and appears particularly applicable here: "Finally, it may properly be here stated that the owner of premises inducing tenants to aid and further his investment is distinctly benefited by reserving to himself the control of common walks and passageways. Thereby he affords convenience to his property which enhances the rental value, and retains himself the power of preventing one tenant from depriving another of equal facilities for the use of the demised premises.

"By securing this right he accepts the burdens that go with it and if he chooses to let the property look after itself, trusting to good fortune to protect those who use the premises, he must be prepared to accept the results when this good fortune abates or takes a turn for the worse."

 The mere fact that Ronald Duffy has been told not to play on the stairway would not make the plaintiff a mere trespasser. Even assuming that Ronald Duffy was negligent in playing on the stairs, there would be no reason to impute his negligence to the plaintiff. (*Singer* v. *Eastern Columbia, Inc.,* 72 Cal.App.2d 402 [164 P.2d 531].) As indicated above, whether or not the plaintiff in the instant case was within the scope of the owner's implied invitation was a matter properly left to the jury.

Our conclusion as to the duty of the defendant to the plaintiff in the instant case is in accord with the weight of authority as to the duty of a landlord or owner to use reasonable care to keep the property in safe condition for those using it as a matter of right. (*Rodenberger* v. *Frederickson, supra,* 111 Cal.App.2d 139; 32 Am.Jur. §§ 688-691; see also cases collected in 25 A.L.R.2d 366, and 26 A.L.R.2d 476.) In a situation such as the instant one where the failure to correct the dangerous condition is relied on as negligence, the plaintiff has the burden of showing that the landlord had actual or constructive notice of the defect in sufficient time to correct it. As indicated above, the plaintiff here has presented substantial evidence to sustain this burden. The defendant's motion for a judgment notwithstanding the verdict was properly denied. (*Estate of Green,* 25 Cal.2d 535 [154 P.2d 692].) The jury could here also have concluded that as the plaintiff

and Ronald Duffy played together every day, the defendant had constructive knowledge of the fact that children were playing in and around the premises. In *Petersen* v. *Crawford* (1942), 263 App. Div. 617 [34 N.Y.S.2d 91], it was held that the infant plaintiff, the playmate of the children of one of the defendant's tenants, was an invitee in the yard of the defendant's apartment house where the defendant had knowledge that the yard was used by the children. In the instant case, the defendant in renting to the Duffys could also reasonably expect that children would play in and around the premises. A landlord was held liable on a similar theory for an injury to an infant child of the tenant of an adjoining building where the child fell through an opening in the railing around a common walkway in *Toledo Real Estate & Invest. Co.* v. *Putney* (1900), 20 Ohio C.C. 486, 10 Ohio C.D. 698.

Defendant's next contention is that the recovery of both the plaintiff and his father is barred by contributory negligence. The issue of whether the plaintiff conducted himself like a reasonably prudent boy of nine and the amount of parental supervision required in the instant case, as well as the other matters which bear on the issue of contributory negligence, were properly left to the jury. Furthermore the trial court very carefully instructed the jury as to the different considerations to be applied in determining the contributory negligence of the plaintiff and the contributory negligence of his father. There is no merit to any of the above contentions, as we are bound by the decision of the trial court if there is any evidence in its support. (*Primm* v. *Primm*, 46 Cal.2d 690 [299 P.2d 231]; *Hicks* v. *Ocean Shore Railroad, Inc.*, 18 Cal.2d 773 [117 P.2d 850].) As pointed out above, in the instant case the evidence was conflicting on these points. It is elementary that this court cannot judge the credibility of witnesses or weigh conflicting evidence. (*Estate of Teel*, 25 Cal.2d 520 [154 P.2d 384].)

Defendant further raises 26 grounds of alleged error in the admission of evidence. Upon careful scrutiny of the record, we can find no errors as alleged nor that when taken together they create such cumulative errors to constitute a ground for reversal.

As to the alleged errors in the instructions, we have in our discussion above covered the instructions relating to the liability of a landlord for the maintenance of a common areaway, the duties of a landlord to an invitee. We find no prej-

udicial errors in the instructions relating to future damages and the future earning power of the plaintiff or in the trial court's refusal to give certain instructions requested by the defendant. It is the rule that the instructions must be considered as a whole (*Shapiro* v. *Equitable Life Assur. Soc.*, 76 Cal.App.2d 75 [172 P.2d 725]) and any errors become a ground for reversal only if they can be said to have resulted in a miscarriage of justice under article VI, section 4½ of the state Constitution.

We conclude that the cause was fully and fairly tried and no prejudicial error appearing, the judgment must be affirmed.

Judgment affirmed.

Order denying motion for judgment notwithstanding verdict affirmed.

Dooling, J., and Draper, J., concurred.

A petition for a rehearing was denied October 10, 1957, and appellant's petition for a hearing by the Supreme Court was denied November 5, 1957. Schauer, J., and Spence, J., were of the opinion that the petition should be granted.