[Civ. No. 24079.   Second Dist., Div. Two.   Dec. 14, 1959.]

DAVID STREET, Appellant, v. GLORENCE BUILDING COMPANY (Individual's Fictitious Name) et al., Defendants; MURRAY DU BOEF, Respondent.

Jerome Weber, Reuben Rosensweig and Harry J. Cohen for Appellant.

Arthur M. Reilly for Respondent.

FOX, P. J.—This is an action for damages for personal injuries sustained by plaintiff while operating a freight elevator in defendant Du Boef's building. At the conclusion of plaintiff's evidence, Du Boef made a motion for nonsuit, which was granted. Plaintiff has appealed from the ensuing judgment.

[1] In reviewing a judgment of nonsuit, an appellate court must view the evidence in the light most favorable to the plaintiff, disregarding all contradictions, conflicts and inconsistencies and drawing only such inferences as may be reasonably drawn in favor of plaintiff. (*Gottloeb* v. *Melrose Health Baths*, 148 Cal.App.2d 313, 316 [306 P.2d 568]; *Leonard* v. *Watsonville Community Hospital*, 47 Cal.2d 509, 514 [305 P.2d 36].)

In accordance with this rule, the evidence discloses the following facts: The plaintiff, David Street, is a singer and musician. On December 1, 1956, he was injured in the freight elevator located in the Glorence Building. The owner of the Glorence Building, Murray Du Boef, is the defendant, the action against the other defendants having been dismissed at the pretrial conference. The Diamond Record Company, whose president was a Mr. Gwirtz, had offices on the ground floor of the Glorence Building. Plaintiff had been an employee of the company until approximately two weeks prior to the accident. Upon termination of his employment, plaintiff received permission from his former employer to store a filing cabinet in the office. The office was also occupied by another company whose president was a Mr. Sica. The lease terminated as to both tenants sometime prior to December 1, 1956.

Several days before the accident, plaintiff was present at a conference between Sica, Gwirtz and defendant's manager, Mr. Septimus. At this time, Sica and Gwirtz made arrange-

ments with Septimus to rent a room on the second floor of the building in which to store some furniture from the office they were vacating. During the course of these negotiations, plaintiff asked whether he could store his filing cabinet in the same room. Both Gwirtz and Septimus said ''Certainly.'' They discussed the problem of moving the furniture to the second floor and Septimus informed them they could use the elevator for that purpose. No instructions were given to plaintiff then or later regarding the operation of the elevator. He had never operated this particular elevator nor one like it.

On Saturday, December 1, 1956, plaintiff went to the Glorence Building to move his property to the second floor storage room. After loading his cabinet into the elevator, plaintiff proceeded to put it into operation. This elevator is a semiautomatic type which requires manual closing of the doors before it can be moved from one floor to another. It is provided with two sets of doors; an inner door of wooden lattice construction which closes horizontally, and an outer door. The outer door is composed of two sections, one of which descends vertically from the ceiling while the other rises vertically from the floor. The two sections meet midway between the ceiling and floor. This type of elevator door is generally referred to as a ''bi-parting'' door as distinguished from the type which opens and closes horizontally. The ''bi-parting'' door must be closed manually, by pulling downward on a strap attached to the upper door, which lowers the upper door and raises the lower door. Two straps were provided to operate this door; one on the outside of the door and one on the inside. The outside strap was designed to be used to close the doors upon leaving the elevator and the inner one for use from within the elevator. No operating instructions were posted either inside or outside the elevator. There were no identifying marks on the straps and the ends of the outer ''bi-parting'' doors were not painted an identifying color, but blended with the floor and ceiling. The entire area was well lighted.

As plaintiff proceeded to put the elevator in operation, he noticed the two straps hanging in the middle of the doorway, and though he looked, he saw no instructions for their use. He thereupon took hold of the *outside* strap and pulled vigorously downward. He was attempting by this effort to move the upper door all the way down to the floor, thinking that when it was closed it would extend the whole distance. Plaintiff thought that the inner strap was to be used to close the inner

lattice door. When he pulled the outer strap with sufficient power to lower (as he thought) the upper door to the floor, the two halves came together with considerable force and crushed the index finger of his left hand. Defendant had notice of a prior accident which occurred under similar circumstances to a Mr. Allen.

The motion for nonsuit was granted on the basis that plaintiff had failed to establish a prima facie case of negligence, in that he had failed to prove a breach of duty. The court ruled that plaintiff was a mere licensee and thus required plaintiff to prove a breach of duty by defendant as a licensor. The first question to be considered is whether the foregoing facts disclose as a matter of law that plaintiff was a licensee or an invitee.

█ The line of demarcation between these two relationships is well stated in *Popejoy* v. *Hannon,* 37 Cal.2d 159, 169 [231 P.2d 484] : "It is the purpose for which a person is upon the premises of another which renders him an invitee rather than a licensee. . . . 'Whether a person entering the premises of another bears the legal status of an invitee or of a mere licensee depends upon the purpose of the visit. So long as its object is the pleasure of only the visitor or of some third party, or of a purely social nature, then he is, at most, only a licensee. When, however, the visitor has a purpose that is related to the occupant's business or that involves some matter of mutual business interest or advantage, then an invitation to use the premises may be inferred, and whether so inferred or expressed the invitation and the purpose make the guest an invitee.' "

█ In support of his argument that he was an invitee, plaintiff urges that he was *expressly invited* by defendant's agent Septimus to store his belongings in the building and to use the elevator to move them. The evidence does not support this contention. It shows unmistakably that plaintiff sought and was granted permission. This could not possibly be construed as an express invitation. The learned trial judge correctly analyzed the evidence on this point when he stated: "The testimony is that Street was present at a conversation between Septimus, Gwirtz and Sica and in which conversation Gwirtz and Sica made arrangements with Septimus to store their property in a space upstairs and that Street asked whether he could store his filing cabinet in the same place and he was told that he could. . . . He asked for the gratuitous privilege of storing his stuff upstairs. . . ."

Having determined that plaintiff was not expressly invited, we must next consider whether the evidence shows an implied invitation. Plaintiff argues that the facts show an implied invitation on the theory that it was to defendant's advantage that plaintiff remove his filing cabinet from the office. There is no merit whatever in this argument. Defendant was not benefited by the move in any way since he could have required plaintiff to remove the filing cabinet from the building entirely. In this regard, plaintiff's purpose was in nowise related to the defendant's business, nor did it involve any matter of mutual business interest or advantage. Plaintiff was simply the recipient of a gratuitous privilege to use defendant's facilities.

Plaintiff also advances the theory that Sica and Gwirtz were tenants of the defendant because of the rental of the storage space, and that since he was an invitee of Gwirtz he was thereby an invitee of defendant. While it is true, generally, that the landlord bears the relationship of an invitor to the invitees of his tenant (*Johnston* v. *De La Guerra Properties, Inc.,* 28 Cal.2d 394 [170 P.2d 5]; *Harper* v. *Vallejo Housing Authority,* 104 Cal.App.2d 621 [232 P.2d 262]), plaintiff was not an invitee of Gwirtz. The permission to store his cabinet, granted to plaintiff by Gwirtz and Septimus, was given at the same time. We have already pointed out that such bare permission did not constitute an express invitation. Moreover, there could be no implied invitation from Gwirtz to plaintiff under the rule of the Popejoy case, *supra,* since no business interest or mutual advantage was involved.

Plaintiff's relationship to Gwirtz was that of a licensee. The question then is: Does this relationship under the facts of this case impose upon defendant the duties of an invitor as to plaintiff? While there are cases that have imposed such a duty in certain situations (see *Yazzolino* v. *Jones,* 153 Cal.App.2d 626 [315 P.2d 107]), there is no such duty on the defendant in the instant case. No possible benefit could accrue to defendant from the use of the elevator by plaintiff. The business operations of Gwirtz had ceased. He was storing his equipment. Defendant was not in the storage business. Permitting Gwirtz to store his equipment in the building was a temporary expedient. Since defendant was not in the storage business it is apparent that he was not interested in keeping Gwirtz as a storage tenant. Therefore defendant had no business interest in the use of his premises by those

whom Gwirtz might choose to admit. There was no business reason for defendant to put himself out in behalf of such persons on the theory that by so doing he would please Gwirtz, and perhaps induce him to occupy the premises longer, since defendant was not interested in the storage business. In such circumstances neither logic nor practical considerations justify placing on defendant the duties of an invitor as to plaintiff merely because Gwirtz had consented to share the storage space with him. It therefore follows that plaintiff was simply a licensee.

The standard of care owed to a licensee by the owner of land is (1) to inflict no wanton or wilful injury upon him (*Knight* v. *Kaiser Co.*, 48 Cal.2d 778, 781 [312 P.2d 1089]; *Fisher* v. *General Petroleum Corp.*, 123 Cal.App.2d 770, 778 [207 P.2d 841]; *Saba* v. *Jacobs*, 130 Cal.App.2d 717, 718 [279 P.2d 826]; (2) to inflict no injury upon him by "negligent conduct of active operations" (*Simpson* v. *Richmond*, 154 Cal.App.2d 27, 30 [315 P.2d 435]; see also *Oettinger* v. *Stewart*, 24 Cal.2d 133, 138 [148 P.2d 19, 156 A.L.R. 1221]); and (3) to protect him from injury from traps (*Yazzolino* v. *Jones, supra*, at p. 636; *Ashley* v. *Jones*, 126 Cal.App.2d 328, 332 [271 P.2d 918].) The general rule is that a licensee assumes the risk of injury caused by reason of a mere defect in the premises unless the defect amounts to a trap. (*Fisher* v. *General Petroleum Corp., supra*, p. 777; *Yazzolino* v. *Jones, supra*.)

Plaintiff's argument that the accident happened as a result of active negligence on the part of defendant is without merit and the cases cited by him in support of this argument are not in point. There is no evidence whatever of an *act* of negligence; on the contrary, defendant's role in this situation was entirely passive. Nor is there proof of wanton or wilful neglect of a duty which would establish defendant's liability. Moreover, the elevator did not constitute a "trap." On this latter point, plaintiff cites *United States* v. *Trubow*, 214 F.2d 192, to the effect that the courts consider the "bi-parting" door elevator to constitute a dangerous instrumentality or "trap." Plaintiff in that case was an *invitee* who was injured in the same manner as plaintiff herein. The court ruled that there were dangers inherent in the situation but the dangers listed were the fact that the area surrounding the elevator and the elevator itself were unlighted and that the strap used to close the door was broken off so that the plaintiff was forced to use the outside handle to close the

door. Thus the Trubow case does not stand for the proposition that the "bi-parting" door elevator is a "trap," but rather than under the circumstances, the defendant had breached the standard of care owed to an invitee. In the instant case, the area was well lighted and both straps were intact and in place.

Since plaintiff failed to make a prima facie showing of a breach of any duty owed to him as a licensee, the judgment of nonsuit was proper.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.